[Crim. No. 3423.   Third Dist.   May 16, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. JOSE GABRIEL BALLEJOS et al., Defendants and Appellants.

Richard S. Simmons and Mrs. Marvel Shore, under appointment by the District Court of Appeal, for Defendants and Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisee, Deputy Attorney General, for Plaintiff and Respondent.

SCHOTTKY, J.—Jose Gabriel Ballejos has appealed from a judgment of the superior court which was entered after a jury found him to be guilty of the crime of selling marijuana. (Health & Saf. Code, § 11531.) Rogiero Ballejos and Jack Wallace Gilbert, who have also appealed, were found to be guilty of the crime of possession of marijuana. (Health & Saf. Code, § 11530.)

It appears from the record that Calvin Gene Payne, who was 19 years old, was employed by the City of Chico as an undercover agent. He was furnished an apartment and his expenses were paid. In addition, he was promised payment for his work, though at the time of trial neither had the amount been set nor had he been paid. He had not, however, been told that he would be paid only if there were a conviction.

Payne testified that on the afternoon of July 31, 1962, he approached Jose Ballejos and asked him if he knew where he (Payne) could find a pound of marijuana. Jose replied that he did not know if he could trust him.

That evening Payne and appellant Gilbert, an acquaintance, went to Jose Ballejos' home. Payne had asked Gilbert to accompany him because Ballejos had told him if he could produce Gilbert the purchase of marijuana would be discussed. Payne then asked Jose Ballejos in the presence of the other defendants if he would supply him with marijuana and was told that he would see what he could do. Payne and all the defendants got into a car and drove out to Bruce Road, where Jose Ballejos pulled out a handkerchief filled with marijuana. According to Payne, he removed the leaves from the stem and proceeded to roll seven ''joints'' (marijuana cigarettes) and gave one to each person present. Each person smoked one, except Payne, who only simulated smoking. After the cigarettes were smoked, Payne offered to buy the remainder of the marijuana and his offer was accepted. Ballejos gave Payne the handkerchief containing the remainder of the marijuana. He also obtained several of the cigarette butts which he placed in the handkerchief. This handkerchief and its contents were turned over to the police. A chemical analysis determined that the substance was marijuana. The testimony of appellants Rogiero and Jose Ballejos was that

they never had marijuana in their possession. They admitted that they had gone for a ride with Payne, but stated they drank beer which Payne allegedly purchased. Gilbert did not testify.

Appellants do not contend that the evidence is insufficient to support the judgments of conviction, but they do contend most earnestly that the evidence against them was extremely weak and that the testimony of Calvin Payne, the prosecution's chief witness, was inherently improbable and should be disbelieved. They state that "IT IS UNCONSCIONABLE TO MAKE PAYMENT TO A POLICE INFORMANT-DECOY CONTINGENT UPON CONVICTION OF THE ACCUSED, BECAUSE IT ENCOURAGES PERJURY AND ENTRAPMENT. . . ." They point out what they consider to be discrepancies in Payne's testimony and make an able and vigorous attack on the reliability of undercover agents. They rely heavily on Payne's testimony that at the time of the trial, which was more than two months after the date of the alleged offense, he had received no payment for his work, although he expected to be paid eventually, and that he had made no agreement as to the amount he was to be paid. They argue that this showed that his payment was contingent on the conviction of appellants.

However this argument of appellants is for the most part one that is properly addressed to the jury and not to an appellate court which is bound by well-settled rules as to the weight of evidence, and it would serve no useful purpose to discuss it in detail. As we view the matter there is nothing inherently improbable about the testimony of Payne. The weight to be given to his testimony was for the jury to determine, and his testimony, which was no doubt believed by the jury, was sufficient to sustain the convictions. It is also to be noted that the trial judge who heard the testimony and observed the witnesses, and who had the right to weigh their testimony, denied appellants' motions for a new trial.

Appellants' most serious contention is that "The trial court erred in compelling a 'stipulation,' over objection, that police officers would testify, if they were called, to finding marijuana seeds fourteen days later in an automobile at the premises where Jose Ballejos lived but that was not under his exclusive control." This contention of appellants is based on the following part of the record:

"THE COURT: The defense has rested. Any rebuttal? MR. BLACKSTOCK: Yes, Your Honor, at this time on behalf of the

People, and also I believe defense counsel has agreed to stipulated that if —— MR. KING: (Int.) Over objection. MR. BLACKSTOCK: Over objection, excuse me, have agreed to stipulated if Chief Evans were recalled and if Sergeant Brooks were recalled and if a deputy sheriff—what is his name, I have forgotten the name—anyway, if he were called, that they would testify that on the night of the 14th, when the defendant—— THE COURT: (Int.) 14th of August? MR. BLACKSTOCK: 14th of August, when the defendant Jose Ballejos was arrested, his car was at his residence, however, he was not in the car; however, that these seeds were in turn turned over to the agent, the Chemist Kvick, and that if Kvick were called upon to testify he would testify that these seeds were marijuana seeds. Is that in essence our stipulation? MR. KING: Yes, I feel we should go just a trifle further, to stipulate that the car was being used by and occupied by numerous other people. MR. BLACKSTOCK: Well, now, that I don't know. MR. KING: We would put that on by way of surrebuttal. MR. BLACKSTOCK: That I have no information on whatsoever. THE COURT: It is my understanding that the objection would be made to the testimony of each witness as to competency and relevancy. MR. KING: Yes, Your Honor. MR. JONES: Yes, Your Honor. THE COURT: Then in effect the objection would have deemed to have been overruled, and if called, the testimony of Chief Evans and Sergeant Brooks and the deputy sheriff who made the arrest of Jose Ballejos did search—is that the 1949 Cadillac? MR. BLACKSTOCK: Yes, Your Honor. THE COURT: Referred to by Mr. Ballejos in his testimony as registered to Donna Ballejos, was searched and that marijuana seeds were discovered in the search; or that seeds were discovered in the search that were later turned over to Kvick, the chemist with the State Narcotic Bureau, who if called, will testify that he examined the seeds and identified them as marijuana. MR. BLACKSTOCK: Yes, Your Honor. MR. KING: May the stipulation go further, that the defendant Gilbert was not present at the time? MR. BLACKSTOCK: So stipulate. MR. JONES: And in addition to defendant—— THE COURT: (Int.) No other defendant was present, and there is no evidence in the present record as to the present occupancy, or present [sic] in that car of any of the other four defendants? MR. KING: And this is not the same car that was used on the 31st day of July. THE COURT: And this is not Rodriquez's 1954 Buick, anything further? MR. JONES: I believe that is all, yes, we can cover the rest on surrebuttal.

"THE COURT: You understand the purport of the stip-

ulation, Ladies and Gentlemen, in effect, we have saved the time it would take for three witnesses to testify, and also an hour or more of delay in order to get Kvick up from Sacramento, so that the stipulation is that if called the witnesses would have given the testimony as outlined in the stipulation, and that may be deemed evidence for your consideration at this time. All right, and that concludes the rebuttal aspect of the case?''

We are unable to agree with appellants' contention that the foregoing stipulation was compelled by the court or that any prejudicial error was committed. It is apparent from the record that there had been an agreement between counsel prior to the offering of the stipulation in court. It seems clear that the stipulation was the result of the effort of the prosecution and defense to save the time that would have been required by the summoning and testifying of the several persons mentioned, and the stipulation was to the effect that if the witnesses were called they would so testify. The court stated that it would be considered that the defense objected to the competency and relevancy of the testimony and that such objection was overruled. The stipulation was made in open court in the presence of appellants, and if appellants or their counsel had desired to cross-examine the witnesses mentioned in the stipulation, they most certainly would not have agreed to the stipulation.

What was stated in *People* v. *Prado,* 190 Cal.App.2d 374 [12 Cal.Rptr. 141], at pages 376-377, is apposite: ''Appellant was represented by counsel of his own choice at all stages of the proceedings, and the record contains no complaint or suggestion by appellant that he was not adequately represented in the trial court. The following statement by the court in *People* v. *Wilson,* 78 Cal.App.2d 108, 119-120 [177 P.2d 567], is pertinent and a complete answer to appellant's first contention: 'Defendant was present and heard her attorney enter into the stipulations. She at no time objected thereto nor sought to be relieved therefrom, nor did her attorney make any such request in her behalf. No contention is advanced that the stipulations were not in accordance with the facts. . . . It would appear that the stipulations were made in the exercise of good judgment on the part of defendant's attorney and that defendant was not prejudiced thereby. But however this may be, defendant is in no position to question the authority of her attorney. When the stipulations were made in her presence and the terms and import of them were

fully understood by her, their binding force did not rest upon the authority of the attorney derived from the attorney and client relationship, any more than it did upon her consent thereto, which was evidenced by her silence.  An attorney has implied authority to enter into stipulations affecting procedure in the trial, as distinguished from those which go to the cause of action itself [citation], and a defendant may not assert on appeal procedural rights which he waived at the trial.  [Citation.]'  (See also *People* v. *Kobey,* 105 Cal.App. 2d 548, 560 [234 P.2d 251] ; *People* v. *Hanna,* 36 Cal.App.2d 333, 336 [97 P.2d 847].) ''

The evidence contained in the stipulation was relevant to refute appellant Jose Ballejos' claim that he had no knowledge of marijuana, that he had never smoked marijuana, or possessed marijuana seeds.  It is well established that in order to prove knowledge of the character of the narcotics the prosecution may introduce evidence of crimes of a similar nature.  (*People* v. *Horn,* 187 Cal.App.2d 68, 75 [9 Cal.Rptr. 578] ; *People* v. *Jackson,* 198 Cal.App.2d 698, 707 [18 Cal. Rptr. 214].)  And such evidence may be established by a stipulation entered by the defendant or attorney for the defendant.  (*People* v. *Leyva,* 187 Cal.App.2d 249, 254 [9 Cal.Rptr. 469].)

*People* v. *Bean,* 149 Cal.App.2d 299, 301 [308 P.2d 27], is directly in point on this question.  It was there alleged that the court had erred in admitting evidence with respect to the finding of marijuana seeds in the defendant's automobile 17 days after the date of the commission of the offense for which he was on trial.  In that case it was stated at page 302 : ''An objection to this evidence was made, in the absence of the jury, on the ground that it was an attempt to show an entirely different crime, and one for which the other defendants were not charged.  The court ruled that the evidence was admissible, stating that it might show familiarity and association with narcotics of the same kind the appellant was accused of having in that cigarette ; that it was up to the jury to determine whether he had knowledge of it ; that counsel could bring out when the appellant bought the car and whether he knew anything about it ; and that it was up to the jury to determine whether or not it was in the car when he bought it, or whether he put it there.  After the jury returned the court, at the suggestion of counsel for the other defendants, instructed the jury that the testimony about to be offered was binding only on the appellant and not on the other defend-

ants. The officer then testified about finding the seeds, without further objection. In his instructions the court told the jury that none of the defendants were being tried 'for those seeds that were found in the car'; that the only purpose for permitting that evidence to be introduced was to show the presence of these seeds and that 'whoever put them in the car was familiar with the use and possession of narcotics'; that the appellant had testified that he did not put the seeds there; and that it was for the jury to determine whether the seeds were put there by him or by someone else, or whether the seeds were there at the time he purchased the car. The appellant had owned the car for about four months.

"It is well established that evidence which is otherwise admissible is not rendered inadmissible by reason of the fact that it may show the commission of another and distinct offense from that for which the defendant is on trial. (*People v. Peete*, 28 Cal.2d 306 [169 P.2d 924]; *People v. Torres*, 98 Cal.App.2d 189 [219 P.2d 480].) . . ."

Appellant Gilbert contends that the district attorney was guilty of misconduct in his final argument to the jury.

In responding to defense counsel's argument the district attorney stated: ". . . It is a very interesting argument; however, — and I find it a very intriguing argument coming from that particular defense counsel, seeing that he has been involved apparently with municipal agencies himself; be that as it may, I submit to you——

"MR. KING: (Int.) I am going to cite counsel for prejudicial misconduct. THE COURT: Mr. Blackstock, I have heard nothing of record in this case, that would support the last statement. Mr. King's objection is well taken and I must request that you withdraw the statement personally. MR. BLACKSTOCK: Which statement was that, Your Honor? THE COURT: I won't have it repeated, I think you know, it was an argument addressed to the person of defense counsel. MR. BLACKSTOCK: I will withdraw the statement, and it was not so intended. THE COURT: I could see no other intent. MR. KING: I accept your apologies. THE COURT: Proceed. MR. BLACKSTOCK: I am just going to the inference that has been attempted to be left with you, that because of the fact he hasn't been paid, the entire testimony should be thrown out, and that is all I was referring to, I certainly didn't mean anything else. THE COURT: All right."

While the remarks of the district attorney were no doubt uncalled for, we do not believe that any prejudice resulted to

appellants therefrom as the court censured the district attorney. Probably more harm was done to the prosecution than to the defense, for as this court said in *People* v. *Motherwell,* 195 Cal.App.2d 545, 568 [16 Cal.Rptr. 140]:

". . . However, when the whole record is considered, we do not believe it can be said that the diatribes of the district attorney, objectionable as they were, resulted in the denying to appellant of a fair trial before the jury. The lay people who make up juries are essentially fair-minded and believe in fair play. Such arguments injected into court proceedings are as apt, or perhaps more apt, to create prejudice against than in favor of the attorney guilty of such offensive conduct."

■ The next contention of all of the appellants is that the district attorney attempted to bolster the People's case by continued references to a transmitting device carried by Payne. Payne was asked if he saw a nonappealing defendant, one Rodriquez, in his apartment, and then Payne testified he asked Rodriquez if he knew where Jose Ballejos got his "pot." The answer was "No." An objection was sustained as to the other defendants and the jury was instructed the evidence was admissible only as to Rodriquez. Then the district attorney questioned about a microphone. The court asked the district attorney if he intended to offer tapes. The answer was "possibly." The subject was then dropped. Later in the examination of a police officer, the district attorney asked what, if anything, did he hear from the transmitting device on the night of the smoking incident. The district attorney said he did not intend to introduce the particular tape but brought the matter up because he thought the jury was entitled to an explanation. In chambers the matter was discussed and the district attorney said that most of one tape was illegible. The matter was eventually dropped.

In his argument to the jury a passing reference was made to the tape but only as against Rodriquez.

■ With a proper foundation the conversation transmitted would have been admissible. (See *People* v. *Davis,* 210 Cal.App.2d 721, 737-738 [26 Cal.Rptr. 903].) ■ If, however, one of the tapes was illegible, the district attorney should not have referred to it. However, the jury was instructed to disregard any testimony which was subsequently withdrawn, and we must assume that the jury followed the instruction.

No other points raised require discussion.

Appellants have made a lengthy, earnest and somewhat impassioned attack upon the testimony of the chief prosecution witness, Calvin Payne, and a general criticism of the law officers involved in the case. They accuse the law officers who employed 19-year-old Calvin Payne as a "police informant decoy" of contributing to juvenile delinquency and encouraging perjury. These were all proper arguments to be made to the jury but have no place in an argument before this court. We are convinced that the evidence is ample to support the judgments of conviction and that no prejudicial error was committed.

The judgments are affirmed.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied June 10, 1963, and appellants' petition for a hearing by the Supreme Court was denied July 10, 1963.