*516
 
 HUFSTEDLER, J.
 

 Limón appeals from a judgment convicting him of violating section 11500.5 of the Health and Safety Code (possession of heroin for sale), entered March 10, 1966. The information against Limón and his two codefendants charged Limón with violating section 11500.5 and with at least three prior felony convictions. Limón initially denied the priors, but at the time of trial admitted them. At the same time Limón moved to suppress evidence on the ground that his arrest and the attendant search and seizure of the heroin were illegal. The motion to suppress was denied. Limón waived trial by jury. The cause was tried and Limón was found guilty as charged. On March 1, 1966, the court denied Limón’s motion for a new trial, denied probation, struck the priors, and sentenced him to state prison for the term prescribed by law.
 

 Limón’s sole contention on appeal is that the court erred in denying his motion to suppress because the heroin was obtained as the result of an illegal search. The search was illegal, he contends, because the search which uncovered the narcotics was made without a warrant and in violation of the provisions of section 844 of the Penal Code.
 
 [1]
 

 Summary of the Evidence
 

 Because the sole issue relates to the legality of the seizure of the heroin, it is unnecessary to summarize any of the evidence other than that which surrounds Limón’s arrest and the seizure of the contraband.
 

 Some time prior to October 19, 1965, Sergeant Dorrell, a Los Angeles police officer assigned to the Narcotic Division, received information from an unidentified source that Limón was selling narcotics. Sergeant Dorrell made a records check and found out that Limón was a parolee. Among the conditions of Limón’s parole were that Limón could not change his address, drive a car, or own a ear without his parole officer’s permission. Sergeant Dorrell checked with the Department of Motor Vehicles and learned that a black, 1958 Ford automobile was registered to Limón. He visited the apartment building in which Limón was reported living and talked to the managers of the building, who told him that although the apartment was in the name of one Mary Summers, Limón
 
 *517
 
 paid half the rent and was regularly observed coining and going from the apartment. Limón had not reported to his parole officer his change of residence from his prior home to the Summers apartment.
 

 Sergeant Dorrell called Limón’s parole officer, Lawrence Costa, and told him about his findings of parole violations and of his suspicions concerning Limón’s traffic in narcotics. Sergeant Dorrell hoped that Costa would give Dorrell authority to arrest Limón for parole violations. He did not believe that he could make Limón’s arrest for a narcotics offense “stand up in court unless I named my informants, which I didn’t want to do.” After the conversation between Costa and Sergeant Dorrell on October 19,1965, Costa told Dorrell to arrest Limón for him and sent a teletype requesting Dorrell to take custody of Limón for parole violation. Costa requested that Dorrell take Costa with him to pick up Limón. Costa, Dorrell and some other police officers on October 19, shortly before noon, went into a vacant room directly across from the apartment Limón was sharing with Summers. The officers agreed that they would wait until someone opened the door of the apartment in which Limón was staying. About 15 minutes after the officers had undertaken surveillance, Limón’s codefendant Urenia opened the door to the apartment and started into the hallway when he saw the officers and retreated into the apartment. While the door was open, Costa and Dorrell saw Limón to the right of Urenia and a woman scantily dressed in the background of the room. As Urenia tried to close the door, Dorrell and Costa rushed toward the door which was not fully closed. No one mentioned that they were police officers. No one explained the purpose for which admission was desired or demanded admittance. The door yielded to pressure and as it opened, Dorrell saw Limón flee toward the bathroom and start to close the bathroom door. Dorrell pursued Limón, reaching the bathroom door before Limón succeeded in completely closing it, grabbed Limón around the neck and pulled him into the living room of the apartment.
 

 Upon a search of Limón and of the premises, 10 bindles of heroin and a condom containing heroin were found in Limón’s pocket and a hypodermic outfit in a cardboard box in the dressing room.
 

 The search and seizure were legal unless they were invalidated by the failure of Costa and Dorrell to comply with the provisions of section 844 of the Penal Code. Costa, as Limón’s parole officer, was entitled to search Limón and his
 
 *518
 
 apartment without a search warrant, without Limón’s consent and without probable cause.
 
 (People
 
 v.
 
 Quilon
 
 (1966) 245 Cal.App.2d 624, 627 [54 Cal.Rptr. 294];
 
 People
 
 v.
 
 Gastelum
 
 (1965) 237 Cal.App.2d 205, 207-209 [46 Cal.Rptr. 734] ;
 
 People
 
 v.
 
 Hernandez
 
 (1964) 229 Cal.App.2d 143, 149 - 150 [40 Cal.Rptr. 100], cert. denied, 381 U.S. 953 [14 L.Ed.2d 725, 85 S.Ct. 1810].)
 

 “A
 
 parolee does not stand discharged from prison, but merely serves the remainder of his sentence outside rather than within the prison walls. He is at all times
 
 in custodia legis
 
 and his physical apprehension by a parole officer is not an arrest.”
 
 People
 
 v.
 
 Quilon, supra,
 
 245 Cal.App.2d at p. 627. A parole officer may have the assistance of police officers in making a search of the parolee and the premises upon which he is found and in taking him into custody. Costa’s authority was in no respect diminished because he was working with Dorrell.
 
 (People
 
 v.
 
 Quilon, supra,
 
 245 Cal.App.2d at pp. 627-628.)
 

 Compliance with the provisions of section 844 of the Penal Code was not required under the circumstances of this case. When, as here, a defendant before the entry already knows what he would have learned from the demand for admittance and explanation of purpose set forth in section 844, insistence upon a recitation of those formalities is idle. The trial court could properly have concluded from the evidence that Limón saw his parole officer, Costa, and the police officers accompanying him when the door was opened by Limón’s companion, and that at that moment Limón knew full well both the identity and the purpose of the callers. Limón’s conduct after he saw the officers reinforces that inference.
 
 (Cf. People
 
 v.
 
 Scott
 
 (1959) 170 Cal.App.2d 446, 453 [339 P.2d 162];
 
 People
 
 v.
 
 Jaurequi
 
 (1956) 142 Cal.App.2d 555, 562 [298 P.2d 896].)
 

 The judgment is affirmed.
 

 Kaus, P. J., and Stephens, J., concurred.
 

 A petition for a rehearing was denied November 29, 1967, and appellant’s petition for a hearing by the Supreme Court was denied January 24, 1968. Tobriner, J., and Sullivan, J., were of the opinion that the petition should be granted.
 

 [1]
 

 Penal Code, section 844, provides: “To make an arrest, ... a peace-officer, may break open the door ... of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which, admittance is desired. ’ ’