[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 644 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 645 
OPINION
This is an appeal from a conviction for possession of heroin in violation of Health and Safety Code section 11500.
Defendant-appellant Phillip S. Kanos was released on parole after a conviction of narcotics possession. He first reported to his parole officer, Marvin E. Holmes, on March 1, 1967. At that time defendant gave his address as 541 1/2 Elm Street, Inglewood, California. Holmes saw defendant on May 31, and June 23, of 1967 at that address, and on March 3, *Page 646 
1967, at his place of employment. On July 14, 1967, defendant's parole was suspended because Holmes had been unable to contact him, and from that date defendant was a fugitive. However, on August 1, 1967, Holmes did receive one communication from defendant, a written report reflecting that defendant's address was still 541 1/2 Elm Street. Defendant was not reinstated. Rather, Holmes made futile efforts to locate defendant, including several visits to the Elm Street address. He was told by defendant's wife, whom he found in residence, that defendant no longer lived there.
Prior to the events to be related Waldo H. Damerell, an agent for the Special Services Unit of the State Department of Corrections, had the function of investigating and apprehending parole violators. He had received information from defendant's parole officer that defendant on occasion stayed at the Elm Street location, might be armed, and was suspected of dealing in heroin in the Los Angeles area. He had also received information from the Los Angeles Police Department that defendant was staying at that location at that time and was suspected of dealing in heroin in the Los Angeles area.
On March 21, 1968, Sergeant Lynn Leeds of the Los Angeles Police Department had received information from a confidential informant, characterized as reliable, that defendant was again living at 541 1/2 Elm Street and dealing in narcotics from there; that he would make trips from there to the city to make deliveries, and that each morning at approximately 7:30 he would take his wife to work. It is readily inferable that he passed this on to the parole officers.
On March 21 Damerell's accompanying partner, Special Parole Agent Chris Brett, had received information from the Los Angeles Police Department that a reliable source had told them that defendant would be at the 541 1/2 Elm Street address on March 22.
On March 22, 1968, at Damerell's request, Leeds and other officers from the Los Angeles Police Department accompanied Damerell and Brett to pick up defendant. At approximately 7:30 a.m. they went to the area of 541 1/2 Elm Street and observed defendant with his wife and child walk out of the driveway and cross the lawn in front of the residence at that address and get into an automobile. The automobile was one of the vehicles that Leeds had been told that defendant used. Defendant was immediately taken into custody for violation of parole. As defendant attempted to hand a chain of keys to his wife, Sergeant Leeds pulled defendant from the driver's seat of the vehicle, patted him down for weapons, handcuffed him and took possession of the keys. There were two car keys and a house key. Damerell found in defendant's wallet a driver's license bearing defendant's picture but with a name other than defendant's and *Page 647 
an address other than 541 1/2 Elm Street. Damerell advised defendant that they were going to search his premises. The officers first searched, with the consent of its occupant (defendant's daughter), a house on the front part of the lot. They left when defendant's wife said, "This isn't our house." They then proceeded to a garage with apartments on the upper floor on the rear of the lot. As Leeds put the house key in the door of the first apartment that he came to, defendant's wife informed him that that was not the right door and that they lived in the next unit. As Sergeant Leeds approached the next door, he asked defendant's wife if anyone was inside. She replied, "No." Leeds opened the door with the key without knocking. A search of the premises ensued. Leeds found a box in a storage closet which contained a scale, milk sugar, and a white crystalline substance. Damerell found an envelope containing a plastic container which held a white powdery substance in the inside pocket of a man's sport coat located in the hallway closet. The white powdery substance found in the coat was subsequently analyzed and found to be heroin.
Defendant and his brother testified that from the end of August 1967, until the pick up, defendant had lived continuously with his mother at 614 Nectarine, Inglewood, California, four or five blocks from the Elm Street residence. Defendant testified that he had last seen his wife approximately three months prior to his apprehension; that he had taken all of his clothing to the Nectarine Street residence; that he was not aware of any men's clothing at the Elm Street residence, and that the keys were in his wife's possession at the time of the arrest.
Defendant's motion under Penal Code section 1538.5 was denied as to the claim of illegal search and seizure.
Defendant contends on appeal that (1) the heroin and related items seized during the search were erroneously admitted into evidence because the search violated the Fourth and Fourteenth Amendments of the United States Constitution; (2) evidence seized in violation of his wife's constitutional rights was erroneously admitted against him; (3) the police officers failed to comply with Penal Code section 844 before entering the residence; and (4) the evidence is insufficient as a matter of law to sustain the conviction.
 I. The Search Was Constitutional as to Defendant
It has frequently been held that a parolee's supervising agent does not need a search warrant, consent of the parolee, or probable cause in order to search the parolee's residence. (People v. Limon, 255 Cal.App.2d 519, 522 [63 Cal.Rptr. 91];People v. Thompson, 252 Cal.App.2d 76, *Page 648 
85 [60 Cal.Rptr. 203] cert. den. 392 U.S. 930 [20 L.Ed.2d 1388, 88 S.Ct. 2276]; People v. Quilon, 245 Cal.App.2d 624, 627 [54 Cal.Rptr. 294];People v. Hernandez, 229 Cal.App.2d 143, 150-151 [40 Cal.Rptr. 100].) Other courts have stated that a parolee's supervisor may search his premises if there is reasonable cause to believe that the parole has been breached. (People v. Mackie, 265 Cal.App.2d 662, 664 [71 Cal.Rptr. 350]; People v. Robarge, 151 Cal.App.2d 660, 665 [312 P.2d 70]; People v. Triche, 148 Cal.App.2d 198, 202 [306 P.2d 616]; People v. Denne, 141 Cal.App.2d 499, 510 [297 P.2d 451].) (1) A parole officer's apprehension of his prisoner for suspected violation of parole is not an "arrest" in the ordinary sense, but a mere transfer of the subject from constructive custody into actual physical custody; standards governing the arrest and search of citizens possessed of full civil rights, therefore, are not applicable to the act of taking physical custody of a parolee. (People v. Villareal, 262 Cal.App.2d 438, 447 [68 Cal.Rptr. 610]; People v. Quilon, supra, 245 Cal.App.2d 624, 627; People v. Denne, supra, at p. 510.)
The rationale for the restriction of Fourth Amendment guaranties as to parolees is as follows: since a parolee is in constructive custody "[f]or the purpose of maintaining the restraints and social safeguards accompanying the parolee's status, the authorities may subject him, his home and his effects to such constant or occasional inspection and search as may seem advisable to them. Neither the Fourth Amendment nor the parallel guaranty in article I, section 19, of the California Constitution blocks that scrutiny. He may not assert these guaranties against the correctional authorities who supervise him on parole [citation omitted]. If this . . . strips him of constitutional protection against invasions of privacy by his parole officer, the answer is that he has at least as much protection as he had within the prison walls. He did not possess this guaranty in prison and it was not restored to him when the gates of parole opened." (People v. Hernandez, supra, 229 Cal.App.2d 143, 150.)
(2a) The search of the apartment as that of defendant was permissible. Defendant had been declared a parole violator because he had not maintained contact with the Department of Corrections. The parole agents suspected that he was armed and dealing in narcotics. Under these circumstances they were justified in searching his residence to determine why he had not maintained contact and if he had violated his parole in other ways. The agents reasonably believed that 541 1/2 Elm Street was defendant's residence. This was the last and only residence which he had reported. The parole office had received information that he was living there and customarily took his wife to work at 7:30 a.m. and would be doing so on the morning of the arrest. This report was corroborated as the agents and officers at that hour observed defendant, his wife, and child walk out of *Page 649 
the driveway leading to the apartment and enter an automobile considered to be one defendant used. Sergeant Leeds took from defendant a key chain holding keys to the automobile and to the apartment.
(3) The legality of the search is not affected by the fact that it was conducted by Special Agents Damerell and Brett rather than by defendant's own parole officer. The function of these agents was to investigate and apprehend parole violators; they were acting in line with department procedures and on behalf of the department. (See People v. Thompson, supra, 252 Cal.App.2d 76, 86 [60 Cal.Rptr. 203].) (4) Nor does the mere fact that the agents were accompanied by police officers detract from the legality of the search. (People v. Coffman, 2 Cal.App.3d 681, 688 [82 Cal.Rptr. 782];People v. Thompson, supra, at p. 85; People v. Quilon, supra,245 Cal.App.2d 624, 627; People v. Contreras, 154 Cal.App.2d 321, 326 [315 P.2d 916].) The arrest and search were not a pretext for discovering evidence for a narcotics prosecution. The parole agents had initiated the investigation and requested the assistance of the police department. Police assistance properly may be requested by parole agents for providing protection and for aiding in the apprehension and investigation of a parole violator. The police officers were not required to close their eyes to contraband found in a lawful search, and they could base a criminal prosecution on it.
Defendant urges us to depart from the line of cases restricting a parolee's Fourth Amendment rights. This is not our role, absent a strong directional signal from the Supreme Court.[1]
Defendant asserts that the Supreme Court has given that in In reMartinez, 1 Cal.3d 641 [83 Cal.Rptr. 382, 463 P.2d 734]. We do not agree. In Martinez it was shown that police officers, not parole agents, undertook the search, and did so pursuant to their general law enforcement duties not even knowing of defendant's parole status. The court held that the officers could not undertake a search without probable cause and then seek to justify it by relying on defendant's parole status of which they had been unaware. The court stated that "[s]ince we do not adjudicate a search of a parolee initiated by a parole agent in connection with duties of parole administration, we need not decide under what circumstances, if any, such a search may be `reasonable' within the meaning of the Fourth Amendment even without a full showing of probable cause." (Id. at p. 647.) It is true that the Supreme Court goes on to say that searches by parole officers are subject to the broad reasonableness requirements of the Fourth Amendment and that a diminution of Fourth Amendment protection is justified only to the extent necessitated by *Page 650 
the legitimate demands of the parole process (id. at p. 647, fn. 6),[2] but this general observation does not rule out appropriate limitations of Fourth Amendment rights as to parolees. (2b) As discussed above, we feel that the search in this case was not a pretext for obtaining evidence for a criminal prosecution and was justified by the needs of parole process regarding the investigation and apprehension of a parole violator.[3] (See People v. Gilkey, 6 Cal.App.3d 183, 186-191 [85 Cal.Rptr. 642] and People v. Gayton, 10 Cal.App.3d 178, 183 [88 Cal.Rptr. 891].)
 II. Defendant Cannot Assert That the Search of His Residence Was Unconstitutional as to His Wife (5a) Defendant, citing People v. Gale, 46 Cal.2d 253, 257 [294 P.2d 13], and People v. Martin, 45 Cal.2d 755, 761 [290 P.2d 855], for the proposition that "whenever evidence is obtained in violation of constitutional guarantees, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant's constitutional rights," urges that even if the search was constitutional as to himself because of his parolee status it was unconstitutional as to his wife and that therefore the evidence seized should have been excluded.
When parole agents are justified in searching a parolee's residence, the parolee cannot assert that his wife's constitutional rights were violated by the search. (People v. Triche,148 Cal.App.2d 198, 203 [306 P.2d 616].) (6) In answer to the contention that defendant makes here, Triche states: *Page 651 
"We have no doubt that the fact that a parolee is married and is living with his wife will not prevent the parole officer from searching his premises without a warrant when there is reasonable cause to believe that he has violated his parole; the wife will then be in no position to complain of violation of her right of privacy, which because of her living with a parolee subject to special rules of supervision, must be to some extent restricted in the public interest." (148 Cal.App.2d 198, 203.)
The defendant supports his argument with two other citations. One is the dissent in People v. Carrillo, 64 Cal.2d 387, 395-396 [50 Cal.Rptr. 185, 412 P.2d 377], where it is intimated that the contravention of the constitutional rights of a third party (unlawful entry and search) could be asserted by a parolee as a violation of his rights. The majority had no occasion to discuss the question because it found the entry and search of the third person's residence to be lawful in that the entry did not violate Penal Code section 844 and the third person consented to the search. The other is People v. Kanos,[4] 70 Cal.2d 381, 385-386 [74 Cal.Rptr. 902, 450 P.2d 278], where it was urged that a third party's arrest was unlawful and that evidence seized incident to that arrest prompted the police to apprehend the defendant and search his apartment. Defendant urges that the court apparently saw fit not to declare that the defendant could not assert the violations of a third party's constitutional rights (suggesting it assumed he could) but, rather, held that there was not a sufficiently direct connection between the evidence seized from the third party and the search of the defendant's apartment.
The cases are clearly distinguishable. In Carrillo the search was of the third person's, not defendant's, residence. In Kanos
there was an unlawful arrest of a third person. (5b) Here, there was a lawful search of defendant's residence. To hold that defendant could assert that his wife's constitutional rights had been violated would be to hold that defendant can immunize his residence from the parole officer's scrutiny by living with someone else, and thus emasculate one significant feature of the parole system.
 III. The Officers Were Not Required to Comply With Penal Code Section 844 (7) The fact that the person involved is a parolee and the act carried out is resumption of physical custody does not excuse compliance with Penal Code section 844's requirements of demand for admittance and notice of purpose before forcing entry into a house to make the apprehension. (Pen. Code, § 3061; People v.Rosales, 68 Cal.2d 299, 303-304 [66 Cal.Rptr. 1, 437 P.2d 489];People v. Taylor, 266 Cal.App.2d 14, 17 *Page 652 
[71 Cal.Rptr. 886]; People v. Limon, supra, 255 Cal.App.2d 519, 521-522 [63 Cal.Rptr. 91].) (8) The doctrinal bases of section 844 and section 1531 of the Penal Code, which imposes the same requirements for execution of a search warrant, are reverence of the law for the individual's right of privacy in his house and discouragement of situations conducive of violence. (Greven v. Superior Court, 71 Cal.2d 287, 292 [78 Cal.Rptr. 504,455 P.2d 432].) These policies do not apply where, as here, the resident of the house enters with the authorities. (SeePeople v. White, 270 Cal.App.2d 680, 682 [76 Cal.Rptr. 104].) This should be particularly true when the resident has informed them that no one is inside.
Greven v. Superior Court, supra, 71 Cal.2d 287, 293-294, and Lockridge v. Superior Court, 275 Cal.App.2d 612, 626 [80 Cal.Rptr. 223], cited by defendant, are distinguishable. These cases hold that the ensuance of silence after an officer's knock does not dispense with the necessity for an announcement of purpose.
 IV. There Was Substantial Evidence to Support the Conviction (9) In a prosecution for unlawful possession of narcotics, the prosecution must prove that the accused exercised dominion and control over the drug with knowledge both of its presence and of its narcotic character. (People v. Groom, 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359]; People v. Boddie,274 Cal.App.2d 408, 411 [80 Cal.Rptr. 83].) These elements may be established by circumstantial evidence. (Id.) Exclusive possession of the premises is not required, nor is physical possession of the narcotic. (People v. Boddie, supra; People
v. Villanueva, 220 Cal.App.2d 443, 450 [33 Cal.Rptr. 811].)(10) Although proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession (People v. Redrick, 55 Cal.2d 282, 285 [10 Cal.Rptr. 823, 359 P.2d 255]), possession may be imputed where the contraband is found in a location which is subject to joint dominion and control of the accused and another. (People
v. Francis, 71 Cal.2d 66, 71 [75 Cal.Rptr. 199, 450 P.2d 591];People v. White, 71 Cal.2d 80, 82-83 [75 Cal.Rptr. 208,450 P.2d 600].)
(11a) Here, there was evidence from which the trier of fact reasonably could have inferred that the jacket hanging in the apartment, in the pocket of which heroin was found, was defendant's. The apartment was the residence last reported by defendant to his parole officer. His wife and child *Page 653 
lived there, and there was scant evidence that they were estranged. Defendant was seen coming out of the driveway leading to the apartment at 7:30 a.m., and the keys to the apartment were taken from his possession. Starting with the premise that defendant did live in the apartment, and having no evidence that another man lived there, it would be logical to infer that the sport coat in the hall closet was defendant's. (12) Unlawful possession may be inferred where narcotics are found in a jacket pocket belonging to the accused or among his personal effects, notwithstanding that someone else may have had the opportunity to deposit the contraband there. (People v. Gory, 28 Cal.2d 450, 457 [170 P.2d 433]; People v. Flores, 155 Cal.App.2d 347, 349 [318 P.2d 65]; Frazzini v. Superior Court, 7 Cal.App.3d 1005, 1016 [87 Cal.Rptr. 32]; People v. Van Valkenburg,111 Cal.App.2d 337, 340 [244 P.2d 750].)
(11b) The intimate location of the substance plus defendant's prior narcotics conviction were adequate to establish defendant's knowledge of its narcotic character. (People v. Jackson,198 Cal.App.2d 698, 707 [18 Cal.Rptr. 214]; People v. Ballejos,216 Cal.App.2d 286, 292 [30 Cal.Rptr. 725].) The cases cited by defendant, People v. Hutchinson, 71 Cal.2d 342 [78 Cal.Rptr. 196,455 P.2d 132], People v. Monson, 255 Cal.App.2d 689
[63 Cal.Rptr. 409], People v. Boddie, 274 Cal.App.2d 408
[80 Cal.Rptr. 83], and People v. Redrick, 55 Cal.2d 282
[10 Cal.Rptr. 823, 359 P.2d 255], are distinguishable in that in them the contraband was not found among the defendant's personal effects.(13) Finding narcotics in personal effects is a potent circumstance indicating knowledge of presence, ownership, control, and narcotic nature. (People v. Redrick, supra,55 Cal.2d 282, 287 [10 Cal.Rptr. 823, 359 P.2d 255]; People v.Mateo, 171 Cal.App.2d 850, 855 [341 P.2d 768]; People v.Antista, 129 Cal.App.2d 47, 53 [276 P.2d 177].) In Frazzini
v. Superior Court, supra, where the court found the evidence sufficient for defendant to answer charges but stated it would "greatly doubt" its sufficiency for a conviction, narcotics were found in a shirt in the closet of the only bedroom of a cabin where defendant and a woman were apparently staying. However, in that case there was clothing admittedly belonging to another man in the bedroom and evidence that the woman, as well as the defendant, had constantly associated with known drug violators. The distinguishable features in and dicta aspect of Frazzini,supra, make it nonpersuasive.
(14) The evaluation of the "circumstances" in the instant case was for the trial court. The following quotation fromPeople v. Redrick, supra, 55 Cal.2d 282, 284, is apt: "[T]he question of the persuasive effect of such evidence is not for an appellate court. And we cannot say that the circumstances *Page 654 
. . . as a matter of law, at most give rise to a mere suspicion and do not permit a reasonable inference of guilt."
The judgment is affirmed.
Kaus, P.J., and Aiso, J., concurred.
Appellant's petition for a hearing by the Supreme Court was denied March 26, 1971. Peters, J., was of the opinion that the petition should be granted.
[1] We cannot hold State v. Cullison (Iowa) 173 N.W.2d 533, cited by defendant, to be persuasive in light of the strong California precedent contrary to it.
[2] We do not feel that the Supreme Court's citation to UnitedStates v. Lewis, 274 F. Supp. 184, 190, in support of the above statement means that that holding is adopted as California law and that we must apply it here. Also the search in Lewis
was by FBI agents, not parole officers.
[3] Defendant directs our attention to a dictum in People v.Belvin, 275 Cal.App.2d 955 [80 Cal.Rptr. 382]. In that case defendant was wanted as a parole violator. Parole agents and police, who had information that she was involved with narcotics and living with a dope peddler, arrested her at her address. The court stated that the police, when arresting a parole violator, can search the person and immediate extensions whether or not they have probable cause to believe they will find evidence of other parole violations or other crimes, but, without a search warrant, cannot conduct a general search of the place where the arrest takes place. The statement is based on Chimel v.California (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034];Chimel is not retroactive. (People v. Edwards, 71 Cal.2d 1096, 1107 [80 Cal.Rptr. 633, 458 P.2d 713].) Belvin seems to treat the parolee's apprehension in her residence as an arrest of an ordinary citizen. The court does not discuss the well established right of parole officers to search a parolee's premises independent of an arrest. Such searches have been upheld: prior to arrest, People v. West, 253 Cal.App.2d 348
[61 Cal.Rptr. 216]; People v. Robarge, 151 Cal.App.2d 660
[312 P.2d 70]; People v. Denne, 141 Cal.App.2d 499 [297 P.2d 451]; accompanying arrest, People v. Limon, 255 Cal.App.2d 519
[63 Cal.Rptr. 91]; or after an arrest has occurred elsewhere, People v.Mackie, 265 Cal.App.2d 662 [71 Cal.Rptr. 350]; People v. Thompson,supra, 252 Cal.App.2d 76 [60 Cal.Rptr. 203]; People v. Gastelum,237 Cal.App.2d 205 [46 Cal.Rptr. 743].
[4] Denis and Toni Antoinette Kanos, not Phillip Steven Kanos, the defendant herein. *Pages 655-678 
[EDITORS' NOTE: PAGES 655 TO 678 CONTAINING OPINIONS HAVE BEEN OMITTED.*,†]
* Opinion appearing on pages 655 to 672 deleted on direction of Supreme Court by order dated March 1, 1971.
† Opinion appearing on pages 673 to 678 modified on February 23, 1971, and reprinted as modified in 15 Cal.App.3d at page 517. *Page 679