[Crim. No. 7573. Third Dist. Mar. 5, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
MELVIN BRAXTON THOMAS, Defendant and Appellant.

## COUNSEL

Evangelin M. Miller for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Marjory Winston Parker, Susan Cohn and Willard F. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PARAS, J.**—After a trial by jury, defendant was found guilty of possession of heroin (Health & Saf. Code, § 11350).[1] He appeals from the judgment.

### FACTS

On November 9, 1973, Roy Asakawa, a parole agent for the State Department of Corrections, received a call from Officer Pederson of the

[1] Unless otherwise indicated, all section references hereafter are to the Health and Safety Code.

Stockton Police Department. Pederson informed Asakawa that he had received recent information from a confidential reliable informant that defendant was in possession of, and dealing in, heroin.

The defendant's regular parole agent was out of town on another assignment. In his stead, Asakawa decided to initiate and conduct a search, and requested the Stockton police to assist him.[2]

At approximately 12:30 p.m. on November 9, Asakawa, Pederson and Stockton Police Officers Horton and Stewart went to the defendant's place of residence. The officers knocked on the door and a Mrs. Elaine Williams (subsequently identified as defendant's girl friend) responded. Asakawa informed Mrs. Williams that he was a parole agent, identified himself, and advised her that they were there to see the defendant. Mrs. Williams told the officers that the defendant was not present, but she admitted them into the apartment.

Upon entering the apartment, Officer Stewart heard a noise in a bedroom and entered it. There he observed the defendant bending over with his hand extended toward a dresser drawer. As soon as the defendant saw the officer, he pulled his hand back from the drawer and began talking. Stewart identified himself to the defendant and showed him his identification. He further advised the defendant of his constitutional rights. Heroin was found in the dresser drawer and the defendant stated that it was his. A visual examination of defendant's eyes and arms revealed that he had been and was still a user of heroin.

Mrs. Williams testified for the defense. She maintained that the heroin belonged to one Vido Tolliver who had given it to her to hold for him, and that the defendant did not know of its existence. She had, however, told the police at the time of the search that the heroin was hers, without associating Tolliver with its ownership.

The defendant, testifying in his own behalf, denied knowing that there was any heroin in the house. He also denied admitting to the officers that the heroin was his.

### 1. DISCLOSURE OF NAME OF CONFIDENTIAL INFORMANT

The defendant claims that the court committed prejudicial error

[2]The legality of the search is not affected by the fact that it was conducted by Asakawa rather than by defendant's own parole officer. (*People* v. *Kanos* (1971) 14 Cal.App.3d 642, 649 [92 Cal.Rptr. 614].)

by denying the request for disclosure of the name of the confidential informant who triggered the search.[3] It is defendant's contention that the informant had personal knowledge of how the heroin was present on the premises. He also contends that if the informant had been called as a witness, he could have corroborated Mrs. Williams' testimony that the owner of the heroin was Vido Tolliver, the alleged third party (this is of course contrary to Mrs. Williams' statement to the police that the "dope" was hers; it is also contrary to the statement of the defendant to the police that the heroin was his).

The only showing of the defendant to support such contentions is that the informant told the police that he was present at the residence of defendant and saw high grade heroin in defendant's possession there. Such facts do not corroborate Mrs. Williams, nor do they disclose a reasonable possibility that the informant could give evidence that might tend to exonerate the defendant. There is nothing else in the trial testimony of the defendant, Mrs. Williams, or anyone else, which would be possibly fortified or clarified by the informant. The trial court thus did not err in denying disclosure of the informant's identity.

Defendant relies upon *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412, 423 [112 Cal.Rptr. 485], where we stated: "Where possession of contraband is among the elements of the crime charged and it is imputed to the defendant by reason of the location at which the contraband is discovered by the police, and where such discovery stems in whole or part from an informer's very recent observation of contraband on those same premises, the Supreme Court has compelled disclosure of the informer's identity if the evidence shows that persons other than the defendant were on the premises when the informer observed the contraband and that the defendant was not then present or may not have been present (*People* v. *Garcia, supra,* 67 Cal.2d 830; *Honore* v. *Superior Court, supra,* 70 Cal.2d 162 & fn. 3 (re defendant Honore); cf., *Theodor* v. *Superior Court, supra,* 8 Cal.3d at pp. 82-83, 89-90; *People* v. *Hunt, supra,* 4 Cal.3d 231), or *if the record is silent* as to whether the defendant was present (*Honore* v. *Superior Court, supra,* 70 Cal.2d 162 & fn. 3 (re defendant Newman))." (Italics in original.)

[3]On January 7, 1974, defendant made a motion to compel disclosure of the informant's identity. The court denied the motion as presented but allowed it to be reopened. The motion was resubmitted on January 21, argued and denied. On March 27, 1974, at the conclusion of the defendant's case, counsel renewed his motion apparently in light of this court's decision in *Williams* v. *Superior Court* (1974) 38 Cal.App.3d 412 [112 Cal.Rptr. 485]. The trial court distinguished *Williams* from the instant case and denied the motion.

In *People* v. *Hambarian* (1973) 31 Cal.App.3d 643, 658 [107 Cal.Rptr. 878], the court summarizes the law of disclosure as follows: " '[W]hen the defendant makes an adequate showing that the informer may be a material witness on the issue of guilt or innocence, disclosure should be compelled or the case dismissed.' (*Theodor* v. *Superior Court, supra,* 8 Cal.3d at p. 88 and cases there cited.) The showing required of a defendant seeking disclosure was delineated in *People* v. *Garcia,* 67 Cal.2d 830, 839-840 [64 Cal.Rptr. 110, 434 P.2d 366] and has been frequently repeated in the decisions of the California Supreme Court (e.g., *Theodor* v. *Superior Court, supra; Price* v. *Superior Court,* 1 Cal.3d 836, 843 [83 Cal.Rptr. 369, 463 P.2d 721]; *Honore* v. *Superior Court,* 70 Cal.2d 162, 168 [74 Cal.Rptr. 233, 449 P.2d 169]: '[A] defendant seeking to discover the identity of an informant bears the burden of demonstrating that, *"in view of the evidence,* [fn. omitted] the informer would be a material witness on the issue of guilt *and nondisclosure of his identity would deprive the defendant of a fair trial."* [Citations omitted.] That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt *which might result in defendant's exoneration.'* (Italics supplied.)"

Here, the informant was not a material witness on the issue of guilt. He simply pointed "the finger of suspicion toward a person who has violated the law." (See *People* v. *McShann* (1958) 50 Cal.2d 802, 808 [330 P.2d 33].) The guilt of the defendant was established by evidence totally independent of the informer.

Defendant was found leaning toward a dresser drawer where the heroin was found. He admitted it was his. His physical condition evidenced recent drug use. In view of this strong evidence of guilt, we conclude additionally that even if the informant were a material witness, the defendant was not deprived of a fair trial (*People* v. *Hambarian, supra* at p. 661), and any error in this regard was harmless beyond a reasonable doubt (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]).

## 2. SEARCH

Defendant contends that the information supplied by the unidentified informant was not sufficiently corroborated to provide reasonable cause to search. (Cf., *People* v. *Cruz* (1966) 244 Cal.App.2d 137, 144-145 [53 Cal.Rptr. 354].) He also contends that there was

no evidence by the prosecution to show that defendant was in fact on parole or subject to a warrantless search. We disagree.

Prior to trial, and out of the presence of the jury, defendant and his counsel both acknowledged to the court the defendant's parole status. Further, since a parole officer initiated the search, it is implicit that petitioner was on parole. Finally, such status was expressly testified to by Agent Asakawa.

■ This was a parole search initiated by a parole officer. Under such circumstances a full showing of probable cause is not required. (*Hernandez* v. *Superior Court* (1971) 16 Cal.App.3d 169, 172 [93 Cal.Rptr. 816].) In this connection we note the court's language in *People* v. *Mason* (1971) 5 Cal.3d 759, 764-765 [97 Cal.Rptr. 302, 488 P.2d 630].) "We have heretofore suggested, however, that persons conditionally released to society, *such as parolees,* may have a reduced expectation of privacy, thereby rendering certain intrusions by governmental authorities 'reasonable' which otherwise would be invalid under traditional constitutional concepts, at least to the extent that such intrusions are necessitated by legitimate governmental demands. (See *In re Martinez,* 1 Cal.3d 641, 647, fn. 6 [83 Cal.Rptr. 382, 463 P.2d 734; cf. *People* v. *Gilkey,* 6 Cal.App.3d 183, 186-188 [85 Cal.Rptr. 642], and cases cited.)" (Italics added.)

We therefore conclude that in view of the information received, it was proper for the parole officer to initiate the search; and it was not necessary to corroborate the information provided by the informant. (See *People* v. *Hernandez* (1964) 229 Cal.App.2d 143, 150-151 [40 Cal.Rptr. 100].)

### 3. Consent to Search

■ Defendant contends that his girl friend, with whom he lived, did not freely consent to the search. The record, however, supports a contrary conclusion. Furthermore, this was a parole search and as such was not dependent upon consent for justification. The evidence showed that defendant, a parolee, shared the residence with Mrs. Williams, and thus was subject to search. Even assuming that Mrs. Williams did not consent to the search, she had no legal authority to prevent it. As stated by Justice Bray in *Russi* v. *Superior Court* (1973) 33 Cal.App.3d 160, 168 [108 Cal.Rptr. 716]: "In our opinion, if the entry and search was reasonable and lawful as to the probationer cotenant, petitioner's consent is irrelevant and *he is in no position* to claim that the officers did not have

the right to search the premises and seize any contraband discovered in the process.

"It is well established that the right of privacy guaranteed by the Fourth Amendment is not an absolute and may be abridged where a compelling public interest so requires. In *People* v. *Triche* (1957) 148 Cal.App.2d 198, at page 203 [306 P.2d 616], such interest was acknowledged in the following language: 'We need not decide in general how far the right of a parole officer extends to search premises which are not under the exclusive control of his parolee or to which the relation of his parolee is not known with certainty. . . . Here, the defendants, although not married, actually lived together in the apartment which they had rented as if they were a married couple. We have no doubt that the fact that a parolee is married and is living with his wife will not prevent the parole officer from searching his premises without a warrant when there is reasonable cause to believe that he has violated his parole; the wife will be in no position to complain of violation of her right of privacy, which because of her living with a parolee subject to special rules of supervision, *must be to some extent restricted in the public interest.* We see no reason why the same should not apply to the woman who lives with a parolee as if they were a married couple, without such actually being the case.' (Italics added.) Parole and probation are equally important aspects of the state's penal system and optimum successful functioning thereof is of compelling public interest. There is no practical difference between a parolee and a probationer that affects the issues of the present case.

". . . If, for argument, it is conceded that a third person's right of privacy may be diminished, such diminution (a deprivation of the right of a probationer's spouse, paramour or other cotenant to refuse police entry and search of the common property) is but incidental to the public interest served."

### 4. CONDUCT OF SEARCH AND ENTRY

■ Defendant contends that the search of the house was not conducted properly, apparently claiming that since the parole agent, Asakawa, did not participate in the search itself, the search was improper. He also contends that the officers did not announce the true reason for their presence to Mrs. Williams. (See Pen. Code, § 844.) Neither of these contentions has merit.

After receiving the information from the Stockton police, the parole agent decided to conduct a search and requested the police to come with

him. Parole *status, in and of itself,* does not justify a search by peace officers other than parole officers. (*People* v. *Thompson* (1967) 252 Cal.App.2d 76, 85 [60 Cal.Rptr. 203]; see *People* v. *Gallegos* (1964) 62 Cal.2d 176 [41 Cal.Rptr. 590, 397 P.2d 174].) However, when a parole officer is justified in making a search, he may enlist the assistance of ordinary peace officers. (*People* v. *Contreras* (1968) 263 Cal.App.2d 281, 285 [69 Cal.Rptr. 548]; *People* v. *Limon* (1967) 255 Cal.App.2d 519, 522 [63 Cal.Rptr. 91]; *People* v. *Thompson, supra* at p. 85.) "When a parole officer seeks to apprehend a parole violator, he may be accompanied by police officers and a search incident to the arrest may be made by them." (*People* v. *Giles* (1965) 233 Cal.App.2d 643, 646 [43 Cal.Rptr. 758].)

*People* v. *Kanos* (1971) 14 Cal.App.3d 642 [92 Cal.Rptr. 614], involved a similar factual situation to the one present here. In *Kanos* the court stated: "Nor does the mere fact that the agents were accompanied by police officers detract from the legality of the search. [Citations.] The arrest and search were not a pretext for discovering evidence for a narcotics prosecution. The parole agents had initiated the investigation and requested the assistance of the police department. Police assistance properly may be requested by parole agents for providing protection and for aiding in the apprehension and investigation of a parole violator. The police officers were not required to close their eyes to contraband found in a lawful search, and they could base a criminal prosecution on it." (14 Cal.App.3d at p. 649.)

*People* v. *Coffman* (1969) 2 Cal.App.3d 681 [82 Cal.Rptr. 782], relied upon by defendant, is distinguishable. In *Coffman,* the police instigated and initiated the search and specifically requested that a parole officer accompany them. The parole officer was merely used as a "front" for the police. (2 Cal.App.3d at p. 689.) There was no such role reversal here.

Defendant also contends that the entry into the residence was improper. The record refutes this. When one of the participating officers was being questioned by the prosecutor, the following occurred: "Q. When you knocked on the door and the door was answered, was Mrs. Williams informed of your reason for being there? A. Yes. Q. Okay, and did you also inform her that you were there to conduct a search? A. Yes. Q. Did you inform her also of your authority for that search and identify yourself? A. Yes. Q. And did she admit you to the apartment? A. Yes."

There was no violation of section 844 of the Penal Code (see *People* v. *Constancio* (1974) 42 Cal.App.3d 533, 542-544 [116 Cal.Rptr. 910]).

## 5. Sufficiency of the Evidence

■ Defendant contends he was not shown to have been in possession of the contraband. He argues that it was not shown that he had the *exclusive* control of the heroin. (See *People* v. *Showers* (1968) 68 Cal.2d 639, 644 [68 Cal.Rptr. 459, 440 P.2d 939].)

■ The role of the appellate court in applying the substantial evidence test is well established. It is to determine whether there is substantial evidence to support the conclusions of the trier of fact and not whether guilt is established beyond a reasonable doubt. *(People* v. *Redmond* (1969) 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].) To this end, the appellate court must view the evidence in the light most favorable to respondent and, before the judgment can be reversed, it must clearly appear that upon no reasonable hypothesis whatever is there substantial evidence to support it.

In *People* v. *Groom* (1964) 60 Cal.2d 694, 696-697 [36 Cal.Rptr. 327, 388 P.2d 359], the court states: "Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic. [Citation.] The foregoing elements may be established by circumstantial evidence and any reasonable inferences drawn from such evidence. [Citation.] And finally when the sufficiency of the evidence is challenged an appellate court must affirm if the record contains substantial evidence of all elements of the crime. [Citation.]"

As we noted in *People* v. *Fusaro* (1971) 18 Cal.App.3d 877, 891 [96 Cal.Rptr. 368], "[e]xclusive possession of the premises where the drug is found is not required, nor is physical possession of the drug."

■ Here, defendant was found in his usual place of residence bending over a dresser with his hand extended toward a drawer containing heroin. He admitted that the heroin was his, and his physical condition confirmed his recent use of the drug. From these facts, we hold that there was substantial evidence to support the verdict.

## 6. Health and Safety Code Sections

■ Defendant finally contends that subdivision (c)[4] of section 11350

---

[4]Defendant similarly challenges the constitutionality of subdivision (b) of section 11350. Since, however, his sentence involves only subdivision (c), we do not rule on subdivision (b).

of the Health and Safety Code imposes cruel and unusual punishment and thus is unconstitutional (U.S. Const. Amend. VIII; Cal. Const. art. I, § 6). This provision prescribes imprisonment of 15 years to life for one who has been twice previously convicted of felony drug violations, and requires service of at least 15 years in actual custody prior to parole eligibility or release on any other basis. Defendant was charged with and admitted a 1955 conviction under section 11500 of the Health and Safety Code and a 1963 conviction under section 11501 of the Health and Safety Code, both felonies. He was therefore sentenced to the enhanced term of the challenged subdivision (c) of section 11350 of the Health and Safety Code.

In view of *In re Foss* (1974) 10 Cal.3d 910 [112 Cal.Rptr. 649, 519 P.2d 1073], particularly the footnote at page 917, we are compelled to hold that the portion of section 11350 of the Health and Safety Code which prohibits parole consideration for 15 years after two prior drug convictions constitutes cruel and unusual punishment.

■ The defendant also challenges the minimum and maximum penalties (15 years to life). The court in *Foss* did not disturb the 10-year-to-life term which it said was validly imposed. (*In re Foss, supra,* pp. 929, 933.) We find no cause to disagree with the penalty prescribed in section 11350 of the Health and Safety Code for a third time drug offender. (See *People* v. *Morgan* (1973) 36 Cal.App.3d 444 [111 Cal.Rptr. 548]; *People* v. *Murphy* (1974) 42 Cal.App.3d 81, 87 [116 Cal.Rptr. 889]; *People* v. *Smith* (1974) 42 Cal.App.3d 706 [117 Cal.Rptr. 88].) The punishment imposed here is not "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch,* 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921].)

The judgment is affirmed. The Adult Authority is, however, directed to disregard the parole restriction provisions of subdivision (c) of section 11350 and to grant parole consideration to defendant at such time as would be otherwise appropriate under general law.

Puglia, P. J., and Janes, J., concurred.

A petition for a rehearing was denied March 24, 1975, and appellant's petition for a hearing by the Supreme Court was denied May 1, 1975.