[Civ. No. 34666. First Dist., Div. One. June 5, 1975.]

In re Timothy N., a Person Coming Under the Juvenile Court Law.
LOREN A. BUCKLEY, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
TIMOTHY N., Defendant and Appellant.

**COUNSEL**

Gregory S. Jensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Keith C. Sorenson, District Attorney, and Michael J. McLaughlin, Deputy District Attorney, for Plaintiff and Respondent.

**OPINION**

**WEINBERGER, J.\***—On November 2, 1973, a juvenile court referee found appellant to be a ward of the juvenile court under Welfare and Institutions Code section 601 (a minor who persistently or habitually refuses to obey the reasonable and proper orders or directions of his custodian). The referee's finding was approved by the juvenile court judge after which appellant petitioned for a rehearing which was denied on November 20, 1973. This appeal is from the order denying a rehearing.

---

\*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

The appellant was 15 years old at the time of the proceedings below and had been a dependent child within the jurisdiction of the juvenile court (Welf. & Inst. Code, § 600)[1] since shortly after his mother's death in 1959. His father never made a home for his children and from 1960 until August 28, 1973, appellant resided in a number of foster homes, including the home of his sister and brother-in-law from June 17, 1972, to August 28, 1973. Both appellant and his sister requested his social worker to remove him from the sister's home and on August 28, 1973, he was placed in the San Mateo County Receiving Home (hereinafter "receiving home") where he remained until October 9, 1973, when he was transferred to Hillcrest Juvenile Hall, the juvenile detention facility for San Mateo County.

On earlier transfers from one foster home to another, and from his sister's home to the receiving home, no supplemental petitions were filed, but on October 11, 1973, a supplemental petition was filed informing the court that appellant had been detained in custody since October 9, and requesting a hearing pursuant to section 632, which was held before a juvenile court referee on October 12, 1973.

The supplemental petition filed by an assistant probation officer stated that the previous orders of the court had not been effective in that "Said minor, . . . wilfully and persistently refuses to obey the reasonable and proper orders and directions of his Custodians at the Receiving Home and is beyond their control in that he persists in unauthorized smoking, uses obscene language, assaults the other children, damages the building, leaves the premises without permission, and refuses to attend school." The first hearing of this petition before a referee was unreported and appellant petitioned for and was granted a mandatory de novo hearing on the issue of his detention by the juvenile court judge, as provided for in section 558. The rehearing on this issue was held on October 29, 1973, and was continued to and completed on October 30, 1973. The appellant attempted to establish that the receiving home was a detention facility and consequently he should have been granted a detention hearing within 48 hours of his placement in the receiving home. Since such a hearing was not held, appellant argued that he was being illegally detained and should be released from custody. (Welf. & Inst. Code, § 631, subd. (a).)

At this rehearing Eleanor Williams, a probation officer at Hillcrest Juvenile Hall, testified that she did not consider temporary placement in

---

[1]All references to code sections hereafter are to Welfare and Institutions Code.

the receiving home to be the same as detention in Hillcrest. She stated that the receiving home was a temporary custodial facility where dependents of the court are held pending permanent placement.

Joan Hummel, appellant's social worker, testified that it was not the policy of her office to file a supplemental petition after placement in the receiving home following a foster home failure. She testified that she did not consider the receiving home to be a detention facility.

Irma and Richard Flint, who were appellant's foster parents for approximately nine years appeared at the hearing. Mrs. Flint testified that sometime after the first of October 1973, she received a call from appellant's attorney and in response to his inquiry she stated that she would be willing to have appellant return temporarily to her home. Mr. Flint basically agreed with his wife's testimony but did add that he was "a little bit hesitant". about temporary placement of appellant in his home as he did not think it was fair to appellant to move him from place to place.

Joan Hummel testified that she had ascertained in the first week in September that Mrs. Flint would be willing to have appellant return to her home but that appellant was not interested in returning there. She testified that she had hoped appellant would return to his sister's home after a "cooling off period." She was also considering transferring appellant to the jurisdiction of Napa County after learning that appellant's father resided there. She spoke with appellant's father on October 5, 1973, regarding his residence.

The court concluded that upon the evidence presented the receiving home was not a detention facility and that appellant had been properly detained in juvenile hall for his persistent and wilful refusal to obey reasonable and proper orders and directions of his custodian at the receiving home.

The detention hearing was followed by a jurisdictional hearing before a juvenile court referee on November 2, 1973. Appellant's position continued to be that he was not lawfully under the control or custody of the receiving home at the time the acts alleged in the petition occurred.

Appellant's counsel and appellant personally conceded that the petition was factually correct in its allegations that appellant ". . . persists in unauthorized smoking, uses obscene language, assaults the other children, damages the building, leaves the premises without permission,

and refuses to attend school." However, they contest the allegations that appellant ". . . refuses to obey the reasonable and proper orders and directions of his Custodians . . . and is beyond their control . . ." for the reason that the persons in charge of the receiving home may give orders only to those lawfully within their custody. Appellant contends that since he was being illegally detained he was not obliged to obey the orders and directions of his custodians.

The referee found that appellant was a juvenile described in section 601 and adjudged him a ward of the court. This order of the referee was approved by the juvenile court judge on November 5, 1973, and this appeal purportedly is from the court's order of November 20, 1973, denying a rehearing.

■ Respondent questions whether an order denying a rehearing is an appealable order. A judgment or decree adjudicating a minor a ward or dependent child under sections 600, 601 or 602 is appealable as a final judgment (see *In re Florance* (1956) 47 Cal.2d 25, 27 [300 P.2d 825]) and ". . . any subsequent order may be appealed from as from an order after judgment; . . ." (Welf. & Inst. Code, § 800; see also *In re Conley* (1966) 244 Cal.App.2d 755, 760 [53 Cal.Rptr. 321]; *In re Corey* (1964) 230 Cal.App.2d 813, 820 [41 Cal.Rptr. 379].) But despite this explicit language an order denying a rehearing of a judgment finding a minor to be a juvenile described in section 602 had been held to be nonappealable. (*In re Joe R.* (1970) 12 Cal.App.3d 80, 83 [90 Cal.Rptr. 503].) The general rule is that unless the motion for rehearing involves entirely new, previously unlitigated issues, a party may not extend the time for appeal by moving for rehearing and attempting to appeal from the denial. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 91, pp. 4098, 4099.) However, where, as here, the appeal is timely, it may be considered, and we shall so consider it, as an appeal from the existing appealable judgment which could and should have been specified. (See *Luz* v. *Lopes* (1960) 55 Cal.2d 54, 59 [10 Cal.Rptr. 161, 358 P.2d 289]; *Shonkoff* v. *Dant Inv. Co.* (1968) 258 Cal.App.2d 101 [65 Cal.Rptr. 463].)

The major thrust of appellant's argument is that his social worker took him into temporary *custody* under section 625.5, subdivision (b), and detained him as authorized by section 628, subdivision (a)(1), having found that no parent, guardian or relative was exercising care for him. Appellant then contends that since he was being detained in temporary custody, the social worker was required to file a petition under section 630, subdivision (a), within 48 hours after his detention (Welf. & Inst. Code, § 631, subd. (a)), failing which appellant was entitled to be released

(Welf. & Inst. Code, § 632). Appellant does not identify the person to whom he should have been released.

The general purpose of the juvenile court law is ". . . to secure for each minor under the jurisdiction of the juvenile court such care and guidance, preferably in his own home, as will serve the spiritual, emotional, mental, and physical welfare of the minor . . . ; and, when the minor is removed from his own family, to secure for him custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents. This chapter shall be liberally construed to carry out these purposes." (Welf. & Inst. Code, § 502; see also *In re Johnson* (1964) 227 Cal.App.2d 37 [38 Cal.Rptr. 405].) It is unthinkable and contrary to the expressed purpose of the juvenile court system that appellant be released to fend for himself because his social worker failed, within 48 hours after placing him temporarily in the receiving home, to file a detention petition.

The issue before this court is whether a supplemental petition must be filed and a detention hearing requested in every case where a previously declared dependent child of the court under section 600 is removed from a foster home and placed in a county receiving home to await further placement. Under the circumstances of the instant case there appears to be no reason in law or logic why such supplemental petition should be filed.

Section 729 provides in part, "Every hearing in which an order is made adjudging a minor a dependent child of the juvenile court pursuant to Section 600 and every subsequent hearing in which such an order is made, except a hearing at which the court orders the termination of its jurisdiction over such minor, shall be continued to a specific future date not more than one year after the date of such order."

When appellant's cause came before the court in June 1973 for annual review the court ordered, among other things, that appellant continues to be a dependent child of the court and that he continues to be committed to the care, custody and control of the department of public health and welfare, social service division, for placement in the home of his sister and brother-in-law. It also ordered that the custody of appellant continues to be removed from the parent. When the placement in the home of his sister and brother-in-law failed, appellant continued to be committed to the care, custody and control of his social worker who had the right and duty to provide temporary placement pending the

arrangement of some other foster home placement which, if successful, would last until appellant ceased to be a dependent child of the court.

The prospect of finding such home did not appear bright. Mrs. Flint, in whose home appellant had lived for nine years prior to his placement in his sister's home, testified that the placement with her failed because appellant became a "little big for . . . [his] britches", a euphemism often used to describe incorrigibility. Thereafter placement in his sister's home failed, and appellant admitted gross misconduct during the 42 days he resided in the receiving home. This strongly suggests that appellant was becoming a juvenile whose foster care could not easily be arranged.

When appellant was transferred to juvenile hall on October 9, 1973, a supplemental petition was properly filed pursuant to section 630. Such petition was then necessary for the reason that appellant was previously under the jurisdiction of the court under section 600, subdivision (a). The court may not commit a section 600 minor to juvenile hall, but may so commit a section 601 ward of the court. (Welf. & Inst. Code, §§ 727, 730.)

■ After consideration of the evidence as to the nature of the receiving home, the court below found that it was not a detention facility and rejected appellant's contention that he had been denied his right to a detention hearing within 48 hours of his placement therein. The record contains substantial evidence to support the court's finding. Eleanor Williams testified that she considered a child held in the receiving home to be detained in the same sense that a child in a foster home is detained. Her reasoning was that ". . . his liberty is not curtailed. He goes to school in a public school. . . . I don't feel they are detained in the same sense as they are when they're in Hillcrest, but it's a detention facility, so described."

She described the receiving home as ". . . a place where dependents of the Court can be held pending an . . . [arrangement] for more permanent placement. If their home is no longer suitable for them, why, they're brought to the Receiving Home. If a Foster Home, for some reason or another, is not a success, why, they're brought to the Receiving Home."

She stated that the receiving home ". . . was designed to be as much like a private family home as they could make it. It is located in a family neighborhood. The children attend the public schools that are located nearby. They are not locked up there. They are encouraged to be involved in whatever activities are available. They can go and play with their friends, if they can make friends."

Individual homes are also used as part of the receiving home. These are licensed foster homes where children who are very young or who have special problems are placed because the receiving home is not equipped to care for them.

The witness further testified that the receiving home ". . . is used for any child who is not a delinquent child or not an incorrigible child. A child who would come under Section 600(a) or (b) if they were brought to court, but there are many children who are placed voluntarily there."

The appellant is asking for a strict construction of sections 625.5, 630 and 631, but section 502 requires that the juvenile court law be liberally construed to carry out its purpose of securing for a dependent or ward of the court ". . . custody, care, and discipline as nearly as possible equivalent to that which should have been given by his parents." All persons, including natural parents, who are responsible for the care, guidance and discipline of a minor are custodians of such minor. To the extent that the minor is required by his custodian to refrain from smoking, from using obscene language, from assaulting other children and damaging property, and from leaving the premises without permission, it may be said he is being restrained and detained. We do not perceive this to be the type of detention to which sections 625.5, 630 and 631 apply.

■ In conclusion, with regard to the primary issue before the court, appellant was not illegally detained as a result of the failure of his social worker to file a supplemental petition and to request a hearing within 48 hours of her placing appellant in the receiving home. It necessarily follows that appellant's admitted failure or refusal to obey the reasonable and proper orders and directions of his custodians constituted sufficient cause to support the finding that he is a juvenile described in section 601, which finding is challenged in this appeal.

Appellant contends that the court failed to grant a rehearing within a reasonable time after the referee's order of detention, and that such failure constituted a denial of due process which compels the dismissal of all proceedings. This issue is raised for the first time on appeal, and appellant admits that its resolution is not necessary to a decision in this case.

Section 558 sets the time limits within which the court must decide whether to grant or deny an application for a rehearing. It also provides that such rehearing "shall be granted as of right" if the proceedings

before the referee are unreported. However the statute sets no time limit within which a rehearing, if granted, must be calendared. The section does allow 20 days for the court, following the receipt of the application for rehearing, to decide whether to grant a rehearing in a reported case. It would not appear to be an abuse of discretion to grant a rehearing application and rule thereon within 13 days in an unreported case, which is what happened in the case at bench.

We are not unmindful that juveniles have constitutionally protected rights. Where a minor is being unlawfully detained, habeas corpus will lie to secure his prompt release. (*In re Butterfield* (1967) 253 Cal.App.2d 794, 796 [61 Cal.Rptr. 874]; *In re Colar* (1970) 9 Cal.App.3d 613 [88 Cal.Rptr. 651].) This remedy was not pursued in the instant case. A juvenile's constitutional rights have been recognized by the United States Supreme Court in *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428], and *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068], and California cases consistent with these decisions. (See 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 306 et seq., pp. 4811-4838.) However, as regards the case at bench, we subscribe to the sentiments expressed by Chief Justice Burger in his dissent in *Winship* in which he attacks the ". . . further strait-jacketing of an already overly restricted system. What the juvenile court system needs is not more but less of the trappings of legal procedure and judicial formalism; the juvenile court system requires breathing room and flexibility in order to survive, . . ." (*In re Winship, supra,* at p. 376 [25 L.Ed.2d at p. 382].)

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.