70 Cal.App.3d 570 (1977)
138 Cal. Rptr. 843
In re WILLIAM C., a Person Coming Under the Juvenile Court Law.
KENNETH F. FARE, as Acting Chief Probation Officer, etc., Plaintiff and Respondent,
v.
WILLIAM C., Defendant and Appellant.
Docket No. 29384.
Court of Appeals of California, Second District, Division Five.
June 9, 1977.
*572 COUNSEL
Paul Arthur Turner, under appointment by the Court of Appeal, for Defendant and Appellant.
Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.
*573 OPINION
ASHBY, J.
On May 18, 1976, a juvenile court referee found appellant to be a person described by Welfare and Institutions Code section 602 in that he committed burglary (Pen. Code, § 459). On May 19 appellant applied for a rehearing of the adjudication proceedings by a judge (former Welf. & Inst. Code, § 558, now § 252). On June 2 the referee ordered appellant removed from the custody of his parents for camp community placement. The record does not clearly indicate the date on which this order was approved by a judge (former Welf. & Inst. Code, § 555, now § 249). On June 8 the application for rehearing of the adjudication was denied. The notice of appeal, in propria persona, "from the orders of the Juvenile Court sustaining the petition of May 4, 1976, declaring him a ward of the Court, and denying his application for a rehearing" was filed on August 9.

TIMELINESS OF APPEAL
(1a) The Attorney General contends the notice of appeal was not timely filed and that the appeal should be dismissed. The notice of appeal was filed within 60 days[1] of the order denying rehearing, but was filed more than 60 days after the adjudication and disposition orders. In order to analyze respondent's contention, we undertake a review of the current law on this subject. At the outset we caution, however, that current law will be modified after July 1, 1977, as discussed in a later section of this opinion, by specific court rules adopted by the Judicial Council.
In the absence of specific rules governing juvenile appeals, the courts have borrowed from rule 2, California Rules of Court, governing civil appeals, and held that the time limit in which to appeal is 60 days from the applicable order. (In re DeBaca, 197 Cal. App.2d 672, 675 [17 Cal. Rptr. 554]; In re Gary R., 56 Cal. App.3d 850, 852 [129 Cal. Rptr. 26].) Several cases have suggested that this 60-day time period does not commence to run until the order denying rehearing. (See In re Richard D., 23 Cal. App.3d 592, 594, fn. 1 [100 Cal. Rptr. 351]; In re J.R., 5 Cal. App.3d 597, 601 [85 Cal. Rptr. 396]; In re Gary R., supra.)[2]
*574 Respondent argues that there is no sound reason for this rule, and that the time should start running either with the adjudication order or the disposition order. We disagree.
Welfare and Institutions Code section 800 provides in pertinent part: "A judgment or decree of a juvenile court or final order of a referee which becomes effective without approval of a judge of the juvenile court assuming jurisdiction and declaring any person to be a person described in Section 601 or 602, ... may be appealed from in the same manner as any final judgment, and any subsequent order may be appealed from as from an order after judgment." In In re Melvin S., 59 Cal. App.3d 898, 900 [130 Cal. Rptr. 844], the court held that the jurisdictional order was in the nature of an intermediate order which is not separately appealable, and that the appeal lies from the dispositional order, which is more analogous to a judgment; however, the jurisdictional order is reviewable on the appeal from the dispositional order.[3]
Welfare and Institutions Code section 800 draws a distinction between a "judgment or decree of the juvenile court" and a "final order of a referee which becomes effective without approval of a judge of the juvenile court...." In the case of a dispositional order by a referee which becomes effective without approval of a judge, the rule that the time period in which to appeal does not commence until the order denying rehearing is clearly correct. The reason is that section 800 refers only to a "final" order of a referee which becomes effective without approval of a judge. When there has been a timely application for a rehearing, the referee's order is not final, so as to be appealable, until the application for rehearing is denied by a judge. (Former Welf. & Inst. *575 Code, § 556, now § 250; see In re Edgar M., 14 Cal.3d 727, 739-740, fn. 11 [122 Cal. Rptr. 574, 537 P.2d 406].) It is the order denying rehearing which gives finality to the referee's order, so as to render the referee's order appealable.
In the instant case, however, the referee's dispositional order was to remove the minor from the custody of his parents for camp community placement, an order which does not "become effective" without approval of a judge. (Former Welf. & Inst. Code, § 555, now § 249; see also former § 557, now § 251.) Where the referee's order is not one which becomes effective without approval of a judge, the appeal under section 800 must be from "[a] judgment or decree of a juvenile court...." (In re Melvin S., supra, 59 Cal. App.3d 898, 901.) The only orders by a judge of the juvenile court in this case were the order approving removal of the minor from the custody of his parents and the order denying rehearing. In these circumstances we think the time period in which to appeal should likewise commence with the order denying rehearing, not at an earlier time as contended by respondent.
The nature of a judge's "approval" pursuant to former section 555 of a referee's order removing the minor from the custody of his parents was explained in In re Dale S., 10 Cal. App.3d 952, 956-957 [89 Cal. Rptr. 499]: "[T]he approval of a referee's order under section 555 is a safeguard against summary removal of the child from the custody of his parent or guardian. Approval of the order is not grounded upon a rehearing on the merits, it is merely an evaluation of the custody aspect of the order, keeping in mind that an application for a rehearing may be filed by a parent or guardian of the child. (§ 558.) Otherwise the referee's order would become effective immediately, under section 556, and the child would be subjected to the psychological trauma of a change of custody which might be reversed if a rehearing is granted." (Id., at p. 956.) In In re Edgar M., supra, 14 Cal.3d 727, 737-738, our Supreme Court cited Dale S. and stated: "Approval under section 555 is not intended as a substitute for rehearing proceedings." Thus under Dale S., the "approval" by a judge of the dispositional order is only conditional where there has been a timely application for rehearing.
In much the same way that an order denying rehearing gives the necessary finality to a referee's order which becomes effective without approval of a judge, the order denying rehearing also supplies the necessary finality to the judge's approval of disposition under section 555. Thus we think it appropriate in both cases that, although the appeal *576 lies from the dispositional order, the time in which to appeal from that order is measured from the order denying rehearing.
We do not agree with the Attorney General's argument that this rule somehow gives the minor an unwarranted or illegitimate extension of time in which to appeal by applying for a rehearing. Respondent relies upon the statement in In re Timothy N., 48 Cal. App.3d 862, 867 [121 Cal. Rptr. 880], that "[t]he general rule is that unless the motion for rehearing involves entirely new, previously unlitigated issues, a party may not extend the time for appeal by moving for rehearing and attempting to appeal from the denial. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 91, pp. 4098, 4099.)" That statement was not necessary to the court's ruling, however, since the appeal there was timely in any event and the court was only concerned that the appellant had misnamed the order appealed from in the notice of appeal. The "general rule" referred to and the cited authority concern a motion to vacate judgment in civil cases. The Attorney General's argument fails to take into consideration that an application for rehearing by a judge of a referee's order is a normal and integral part of the juvenile court proceedings, based upon the fact that under article VI, section 22 of the California Constitution the referee may only perform subordinate judicial duties. (See In re Edgar M., supra, 14 Cal.3d 727, 734-736; In re Dale S., supra, 10 Cal. App.3d 952, 956; In re Anthony M., 64 Cal. App.3d 464, 468-469 [134 Cal. Rptr. 540]; see also In re Larry W., 16 Cal. App.3d 290, 292 [94 Cal. Rptr. 31].)
Thus the concept that the time in which to appeal from the dispositional order is measured from the order denying rehearing does not depend, as both parties seem to assume, on whether the order denying rehearing is itself appealable. Thus respondent's reliance on the statement in In re Joe R., 12 Cal. App.3d 80, 83 [90 Cal. Rptr. 530], that an order denying rehearing is not appealable, is misplaced. We agree with the parties, however, that this statement is a source of possible confusion and should be clarified. (2) Several subsequent cases have made clear that, where the issue the appellant seeks to have reviewed is an alleged error in the actual process of rehearing, an order denying rehearing is appealable. (In re Edgar M., supra, 14 Cal.3d 727, 740-741 (denial of rehearing must result by means of an affirmative review of the transcript by a judge, and not by operation of law); In re Damon C., 16 Cal.3d 493, 496-497 [128 Cal. Rptr. 172, 546 P.2d 676] (judge must have transcript of counsel's oral argument to referee); In re Randy R., 67 Cal. App.3d 41, 43-44 [136 Cal. Rptr. 419] (judge erroneously applied an appellate *577 substantial evidence standard of review instead of exercising his independent judgment on the record of the proceedings before the referee); In re Melvin S., supra, 59 Cal. App.3d 898, 901, 902 (where rehearing was sought only as to disposition, judge was not required to order transcript of the adjudication hearing).)
But, where the appellant raises no such issue and merely seeks to review alleged errors by the referee in adjudication or disposition, the appellant is not actually appealing "from the order denying rehearing." The inclusion of the order denying rehearing in the notice of appeal in such cases is merely so much boilerplate.[4] In such circumstances the appellate court may either dismiss the purported appeal from the order denying rehearing (In re Joe R., supra; see Fowler v. Fowler, 126 Cal. App.2d 496, 501 [272 P.2d 546]) or disregard such language and construe it as an appeal from the judgment. (In re Timothy N., supra, 48 Cal. App.3d 862, 867.)
(1b) Respondent raises one more point. He argues that appellant should not have the benefit of this rule because appellant applied for a rehearing only of the adjudication order, and did not apply for rehearing of the dispositional order. Respondent argues that the pendency of a petition for rehearing of the adjudication order could not "extend" the time in which to appeal the dispositional order, as to which no rehearing was requested. We do not agree that the time period begins to run when the disposition occurs while an application for rehearing of the adjudication order is pending. If the rehearing were granted, the disposition order based on the referee's adjudication order could not continue to exist in limbo. (In re Anthony M., supra, 64 Cal. App.3d 464, 469-470.) Appellant is entitled to review errors in the adjudication proceeding on appeal from the judgment. (In re Melvin S., supra, 59 Cal. App.3d 898, 900.) For the reasons discussed above, the judgment of the juvenile court was not final for purposes of appeal until the order denying rehearing.
We conclude the notice of appeal was timely filed. We therefore need not consider the arguments and declarations submitted by the parties as to why the notice was not filed sooner.

*578 NEW RULES EFFECTIVE JULY 1, 1977
Pursuant to its constitutional and statutory powers (Cal. Const., art. VI, § 6; Welf. & Inst. Code, § 265) the Judicial Council of California has adopted new rules of court which will specifically govern juvenile appeals and which will go into effect on July 1, 1977. These rules effect a very important change in the current law we have summarized above.
After July 1 the problem posed by the instant case would be governed by new rule 39(b) which provides: "(b) [Notice of appeal; time for filing] In the cases provided by law, an appeal from the juvenile court is taken by filing with the clerk of that court a written notice of appeal within 60 days after the rendition of the judgment or the making of the order or, in matters heard by a referee, within 60 days after the order of the referee becomes final under rule 1318(c). When an application for a judicial rehearing of a referee order is made and denied under rule 1319, the notice of appeal shall be filed within 60 days after service of the referee's order in accordance with rule 1317(b)(3), or within 30 days after the entry of the order denying the application, whichever time is greater. When a notice of appeal is received, the clerk shall proceed in accordance with rule 31." (Cal. Rules of Court, rule 39 (eff. 7-1-77), excerpt from Judicial Council of Cal., Annual Rep. (1977) ch. 2, p. 125; italics added.)
Thus under the new rule the application for rehearing will extend the time to appeal by no more than 30 days, compared to 60 days under existing law. New rule 39(b) is thus analogous to rule 3, which governs the time limit for appeal in civil cases where there has been a motion for new trial or motion to vacate judgment which has been denied. This changes existing law because the analogy to rule 3 was rejected in In re J.R., supra, 5 Cal. App.3d 597, 601.

ISSUE ON APPEAL
Turning to the merits, appellant raises only one issue on appeal. This case involves a residential burglary which occurred in Rowland Heights on April 12, 1976. Appellant was arrested for this burglary on April 13 at the home of David Dancy in Rowland Heights. At the sheriff's station appellant admitted his participation in the burglary with two other persons. (3a) Appellant contends that the confession should have been suppressed as the product of an illegal arrest, on the sole ground *579 that the deputy sheriff failed to comply with Penal Code section 844[5] when he entered the house to arrest appellant, who was sitting on a couch near the front door. After a hearing on this issue, the trial court admitted the confession.[6]
(4) On the motion to determine whether there was a violation of section 844, the trial court sat as a trier of fact. It is solely the function of the trier of fact to judge the credibility of witnesses, resolve conflicts in the testimony, weigh the evidence, and draw factual inferences. On appeal all presumptions favor the exercise of that power, and the trial court's findings, whether express or implied, must be upheld if they are supported by substantial evidence. (See People v. Lawler, 9 Cal.3d 156, 160 [107 Cal. Rptr. 13, 507 P.2d 621]; People v. Superior Court (Peck), 10 Cal.3d 645, 649-650 [111 Cal. Rptr. 565, 517 P.2d 829]; People v. Citrino, 11 Cal. App.3d 778, 783 [90 Cal. Rptr. 80]; People v. Rodriguez, 10 Cal. App.3d 18, 31-32 [88 Cal. Rptr. 789].)
(3b) Deputy Sheriff Francis had information from several witnesses that appellant was observed at the scene of the burglary. He also had information there was a warrant for appellant as a runaway from camp. Several juveniles told Deputy Francis that they believed appellant was staying with David Dancy, who lived in the area. Around 5 p.m. the day after the burglary, Deputy Francis went to Dancy's house to learn if appellant was there. Although the deputy did not expressly testify he was in uniform, the record provides overwhelming evidence that he was.[7]
Deputy Francis knocked on the door, and a female subsequently identified as Darlene Dancy opened the door.[8] Deputy Francis asked if David Dancy was at home. He then observed appellant sitting on a *580 couch in the living room, just inside the front door, approximately three feet from where Deputy Francis stood outside the door. Appellant was hiding his face with his right hand, and Deputy Francis, from the door, asked appellant his identity. Because of appellant's unusual behavior, however, Deputy Francis, after stating his purpose for being there, "step[ped] in slightly to ascertain his identity and determine whether or not he did have a weapon."[9] Deputy Francis was invited inside by Darlene and was asked to sit down."[10] Subsequently he arrested appellant.
Appellant contends there is no evidence that Deputy Francis identified himself and stated his purpose before the point at which he "step[ped] in slightly" to obtain a better look at appellant, and that therefore section 844 was violated. This contention is without merit. The record contains substantial evidence of compliance or substantial compliance with both of these elements of the statute.
When the door was opened by Darlene, appellant was just inside the doorway, only three feet away from the deputy. Deputy Francis immediately saw him and he could see Deputy Francis. (See People v. Baldwin, 62 Cal. App.3d 727, 741 [133 Cal. Rptr. 427] (as to defendant Cano).) As we have pointed out, it clearly appears that Deputy Francis was in uniform. This fact identified the officer to the occupants and dispensed with the need for a formal recitation of his identity. (People v. Bigham, 49 Cal. App.3d 73, 80 [122 Cal. Rptr. 252]; see People v. Hayko, 7 Cal. App.3d 604, 607-608 [86 Cal. Rptr. 726].)
In People v. Hayko, supra, the court held that assuming the fact the officers were in uniforms might dispense with the need for an announcement of identity, it could not serve to satisfy the second requirement, announcement of purpose. Appellant argues there was no evidence Deputy Francis announced his purpose. This contention is contradicted by the following testimony:
"Q. Didn't you step into the front door slightly before you were invited in?
"A. Yes.
*581 "Q. And wasn't this also before you had stated your purpose for being there?
"A. No." (Italics added.)
When considered together with the fact that Deputy Francis (1) had asked Darlene if appellant was present, and (2) had seen appellant and asked his identity from outside the door, this question and answer supports the inference that Deputy Francis stated his purpose for being there. Although the issue might have been clarified by more precise questioning, we hold the record sufficient when viewed in the light most favorable to respondent.
Appellant erroneously argues that such statement was completely negatived by the questions which followed:
"Q. What was your purpose for being there?
"A. To ascertain if [appellant] might be at the location.
"Q. And to arrest him, correct?
"A. If he was there, yes.
"Q. Did you ever state that, specifically, that you were there to arrest him?
"A. No."
Appellant argues the officer thus conceded that he did not make a specific statement of his purpose. However, the question was limited to whether Deputy Francis announced he was going to "arrest" appellant. Deputy Francis stated his general purpose in broader terms, i.e., to see appellant. He had the right to seek out appellant and attempt to interview him (People v. Boone, 2 Cal. App.3d 66, 69 [82 Cal. Rptr. 398]) and we must assume in support of the judgment that his testimony that he had already explained his purpose for being there referred to his broader purpose.
Furthermore, the record supports a conclusion of substantial compliance with the requirement for announcement of purpose. (5) An express announcement is not required where the surrounding circumstances make the officer's purpose clear. (People v. Rosales, 68 Cal.2d 299, 302 [66 Cal. Rptr. 1, 437 P.2d 489]; People v. Hall, 3 Cal.3d 992, *582 997-998 [92 Cal. Rptr. 304, 479 P.2d 664]; People v. Bigham, supra at pp. 80-81; People v. Limon, 255 Cal. App.2d 519, 522 [63 Cal. Rptr. 91]; People v. Vasquez, 1 Cal. App.3d 769, 774-775 [82 Cal. Rptr. 131].) (3c) Appellant's attempt to hide his face when he saw the officer at the door supports the inference that appellant "knew full well both the identity and the purpose of the callers." (People v. Limon, supra.)
Appellant's effort to liken Deputy Francis' slight step to a serious violation of section 844 is unpersuasive. The door had already been opened. Appellant was visible but was attempting to hide his face. The deputy's purpose was to ascertain if appellant was at the residence, and under such circumstances it was reasonable and natural for the officer to make a slight movement in order to attempt an identification.[11] At most, there was a technical and insubstantial "breaking" which did not conflict with the purposes section 844 is designed to serve. (People v. Peterson, 9 Cal.3d 717, 723-724 [108 Cal. Rptr. 835, 511 P.2d 1187].) No right of privacy was infringed because appellant was already visible through the open door. There was no great risk of violence being directed at the officer by a householder startled at an unknown intruder, since appellant could also see the officer through the open door and could tell his identity and purpose. (Id.) Already appellant was within three feet of the officer, and no substantial intrusion was involved. If appellant had answered the door himself, rather than sat just directly inside, the officer could have crossed the threshold and seized him without violating section 844, under People v. Hagen, 6 Cal. App.3d 35, 43 [85 Cal. Rptr. 556].
We conclude there was no violation of section 844.
As in In re Timothy N., supra, 48 Cal. App.3d 862, 867, 871, we shall treat the notice of appeal as from the judgment.
The judgment is affirmed.
Kaus, P.J., and Hastings, J., concurred.
A petition for a rehearing was denied June 30, 1977, and on July 5, 1977, the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied August 5, 1977. Sullivan, J.,[*] participated therein. Bird, C.J., was of the opinion that the petition should be granted.
NOTES
[1] The 60th day was Saturday, August 7, 1976. The notice was timely filed on Monday, August 9, the first court day after the 60th day. (Code Civ. Proc., 12a; Taliaferro v. Davis 217 Cal. App.2d 215, 216 [31 Cal. Rptr. 693].)
[2] In re Mary B., 20 Cal. App.3d 816, 819 [98 Cal. Rptr. 178], cited by respondent, is not contrary. In Mary B., the jurisdictional order was made by the juvenile court of one county, which thereafter transferred the cause to another county, the residence of the minor, for disposition. The appellate court indicated that the time in which to appeal from the adjudication order of the first county commenced to run without regard to developments in the second county. Mary B. was concerned with the distinct problem created by transfer from one county to another (see Lassen County v. Superior Court, 158 Cal. App.2d 74 [322 P.2d 49]), not with the problem posed by the rehearing procedure.
[3] In Melvin S., the court explained: "As originally enacted, section 702 of the Welfare and Institutions Code, referred to the determination that a minor was a person described in sections 600, 601 or 602 of the Welfare and Institutions Code as a `judgment.' That language led to the opinion that the jurisdictional determination was immediately appealable as a final judgment and that the dispositional order was appealable, under section 800 of the Welfare and Institutions Code, as an order after judgment. (See the discussion of that matter in the 1963 Report of the Judicial Council, pp. 85-86.) In 1963, section 702 was amended to substitute the term `order' for the former term `judgment.' We conclude that that amendment was intended to, and did, effect the recommendation of the Judicial Council that only the dispositional order to be appealable and that the jurisdictional order be subject to review on that one appeal." (59 Cal. App.3d at p. 900.)
[4] We suspect that in many cases counsel have included such language in the notice of appeal out of uncertainty that the clerk might otherwise regard the notice as untimely.
[5] Penal Code section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace-officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."
[6] Since the prosecution did not seek to introduce any observations or tangible evidence seized at the time of appellant's arrest, the motion was treated as one under Evidence Code section 402 rather than a motion under Penal Code section 1538.5.
[7] Deputy Francis arrived at the house in a marked patrol car with one other officer, his partner. He had his police baton. After the arrest he did not interrogate appellant because it was departmental policy to leave that to "the detectives." "Detective" Pavlich interviewed appellant Francis referred to himself as "Deputy."
[8] Deputy Francis identified the female as a "juvenile." Her exact age is not indicated, but it may be inferred that she was near appellant's age from testimony she was one of appellant's "girl friends." Appellant was 16.
[9] The deputy was aware that a nine millimeter German Lugar pistol was taken in the burglary.
[10] See Mann v. Superior Court, 3 Cal.3d 1, 8-9 [88 Cal. Rptr. 380, 472 P.2d 468]; People v. Superior Court (Fall), 31 Cal. App.3d 788, 796-797 [107 Cal. Rptr. 756]; People v. Ramirez, 4 Cal. App.3d 154, 157 [84 Cal. Rptr. 104]; People v. Bvrd, 38 Cal. App.3d 941, 951 [113 Cal. Rptr. 777]; People v. Havs, 250 Cal. App.2d 373, 379 [58 Cal. Rptr. 293].)
[11] Deputy Francis was previously acquainted with appellant.
[*] Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.