Filed 10/3/13  In re L.W. CA3

## <u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re L.W. et al., Persons Coming Under the Juvenile Court Law. | C072974 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>Betty W.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. JD232207, JD232208) |

Betty W., mother of the minors, appeals from orders of the juvenile court denying her petition for modification and terminating parental rights.  (Welf. & Inst. Code, §§ 366.26, 388, 395 [further undesignated statutory references are to the Welfare and Institutions Code].)  Mother argues the juvenile court erred in denying her petition for modification without a hearing.  We affirm.

1

## FACTS

In 2006 the minors' half sibling, Am.W., was removed from mother's custody after the then four-year-old child was found wandering on a busy street. She was covered with self-inflicted scars and was a victim of sexual abuse by relatives. The juvenile court ordered reunification services for mother that included parenting and anger management classes and, in June 2007, returned the minor to mother under supervision. Within a year, Am.W. was again removed and mother was offered further parenting and substance abuse services, but services were soon terminated because mother did not participate in them and was again neglecting the child's care. The court subsequently suspended visitation due to the effect mother's conduct had on Am.W. In September 2010 the court granted mother six more months of reunification services but ultimately terminated services again in March 2011. The child was placed in a group home.

The minor As.W. was born in January 2009 and mother was afforded informal supervision services by the Sacramento County Department of Health and Human Services (Department) that included substance abuse and mental health treatment. Mother admitted a history of substance abuse including methamphetamine, alcohol, and marijuana. Mother was compliant with the informal supervision services and the case was closed in October 2009. L.W. was born in December 2009 and mother completed a substance abuse treatment program shortly thereafter.

In February 2012 the Department filed a petition to have the minors As.W., age three, and L.W., age two, removed from mother's custody due to neglect and physical abuse after the minors were found wandering in the rain clad only in diapers and a physical examination disclosed marks and scars consistent with physical abuse. Mother blamed the minors' injuries on rough play and was unwilling to take responsibility for her failure to provide adequate care and supervision of the minors, showing little insight into why the minors were removed. In further interviews, mother declined to discuss the issue of physical abuse with the social worker.

2

Department reports suggested that the minors' extreme aggressive behavior toward mother during visits could indicate exposure to violence. When an intensive treatment counselor used a story to identify the minors' feelings, both minors commented that the mommy in the story would " 'beat their asses' " if they did not stop jumping on the bed.

The minors' behaviors were initially very challenging, but after a placement change, therapy, and several months in a new foster home, the minors were reportedly making " 'great progress' " in foster care, their aggressive behaviors were decreasing, and they were learning to use their words and table manners. Visits continued to be marked by the minors' aggressive behavior toward mother and other adults. Over time, their aggression decreased but mother needed coaching to redirect the minors. L.W. continued to be more aggressive than As.W. and tantrums occurred when the minors were stressed, but there were visits that went well for both minors. When visitation was increased, the minors' behaviors regressed both at visits and at the foster home.

Mother participated in some services, including parenting education, prior to the disposition hearing. The court sustained the petition and bypassed services based on evidence of infliction of severe physical abuse on the minors while in mother's care (§ 361.5, subd. (b)(6)) and of the prior termination of services as to Am.W. with no reasonable efforts to treat the problems that led to Am.W.'s removal (§ 361.5, subd. (b)(6)). The court set a section 366.26 hearing to select a permanent plan for the minors.

The November 2012 report for the section 366.26 hearing stated that when the case was transferred to the adoptions unit, visits were decreased from twice a week for two hours to once a month for one hour. The minors had behavioral issues before and after visits but looked forward to seeing mother. Visits continued to be marred by the minors' challenging behaviors and intervention by the visit supervisor when mother did not respond appropriately. The minors were moved to an adoptive placement in

3

October 2012. During the November 2012 visit following the move, L.W. began acting out halfway through the visit and mother was unable to redirect his behavior. Both minors were removed from the room at the end of the visit and the foster father worked to calm L.W. The social worker believed that L.W. showed age-appropriate behavior, pushing boundaries but respecting authority. The current caretakers were successful in redirecting his behavior and in handling his fears, which they thought might be due to past trauma. As.W. would benefit from a stable and supportive environment and also presented as age-appropriate. Her tattling and lying behaviors decreased over time in placement. Both minors' negative behaviors had moderated with ongoing therapy and reduced visitation, but both needed routine and could react poorly to transitions. The report recommended termination of parental rights with adoption by the current caretakers as the permanent plan because the minors needed a stable permanent home.

In January 2013 mother filed a petition for modification seeking an order vacating the section 366.26 hearing and granting her services. Mother alleged that since the disposition hearing she had continued in services, completing counseling and addressing anger management issues and appropriate discipline. She also completed substance abuse treatment and had tested alcohol free. Mother further alleged she had maintained stable housing, and enrolled in and completed classes on anger management and parenting separate from her counseling sessions. Various summaries, letters, and certificates attached to the petition supported the allegations that she had completed some services. Mother alleged the proposed change was in the minors' best interests because she was committed to them and they were attached to her. She believed the minors' increased behavioral issues were due to their desire to spend more time with her.

The court issued a written ruling denying the petition for modification, finding that the petition showed neither changed circumstances nor that the proposed order was in the minors' best interests. In explaining the ruling, the court noted that a counseling summary attached to the petition stated that mother felt what the group had taught her

4

was that she was "normal and not what CPS portrayed her to be." The court observed that physically abusing her children was not "normal" and that mother was in general counseling with no indication that she addressed the question of physical abuse of the minors. Further, even assuming mother's services addressed past issues that recurred in this case, the evidence showed her circumstances were changing, not changed. Finally, the petition did not show how the best interests of the minors in permanence and stability would be served by the provision of services. Despite the services mother had completed, she still required supervised visitation and was unable to manage the minors' behaviors without assistance. There was no indication that mother would be better able to apply what she had learned if she had more services. The court concluded that delaying permanency for services which over the years had not produced adequate parenting by mother was not in the minors' best interests.

At the section 366.26 hearing on January 15, 2013, the juvenile court terminated parental rights and selected adoption as the permanent plan for the minors. Mother filed a notice of appeal January 22, 2013, and an application for rehearing January 25, 2013. The order denying rehearing of the denial of the petition for modification and the order terminating parental rights was filed March 7, 2013.

## DISCUSSION

## I

Mother requests that this court construe her notice of appeal to include the order on rehearing.

When the juvenile case is heard by a referee, the time in which to appeal the referee's order is measured from the date the order is final, which is either "10 calendar days after service of a copy of the order" or, if an application for rehearing has been made, the date of service of the denial or entry of the denial order, whichever is later. (Cal. Rules of Court, rules 5.540(c), 8.406(a).) The time for filing the notice of appeal is either 60 or 30 days, depending upon the conditions of finality. (Cal. Rules of Court,

5

rule 8.406(a)(3).)  The notice of appeal was filed well before the application for rehearing was denied and the referee's order was final.  (*In re L.J.* (2013) 216 Cal.App.4th 1125, 1139, fn. 12.)  We may, and we do, construe the notice of appeal as timely.  (*Ibid*.)  However, because appellant raises no issues regarding review of the process of rehearing, we treat the appeal as from the referee's order only.  (*In re Eric B*. (1987) 189 Cal.App.3d 996, 1001, fn. 3; *In re William C*. (1977) 70 Cal.App.3d 570, 577.)

**II**

Mother argues the court erred in failing to order a hearing on her petition for modification, asserting that she established a prima facie showing of changed circumstances and best interests of the minors.  We disagree.

A parent may bring a petition for modification of any order of the juvenile court pursuant to section 388 based on new evidence or a showing of changed circumstances.[1]  "The parent requesting the change of order has the burden of establishing that the change is justified." (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.)  The best interests of the child are of paramount consideration when the petition is brought after termination of reunification services.  (*In re Stephanie M*. (1994) 7 Cal.4th 295, 317.)  In assessing the best interests of the child, the juvenile court looks not to the parent's interests in reunification but to the needs of the child for permanence and stability.  (*Ibid*.; *In re Marilyn H*. (1993) 5 Cal.4th 295, 309.)

To establish the right to an evidentiary hearing, the petition must include facts which make a prima facie showing that there is a change in circumstances and "the best

---

[1] Section 388 provides, in part:  "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court."  (§ 388, subd. (a)(1) .)  The court must set a hearing if "it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . ."  (§ 388, subd. (d).)

interests of the child may be promoted by the proposed change of order." (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672-673 (*Daijah T.*); see *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806 (*Zachary G.*); *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1414; Cal. Rules of Court, rule 5.570(e)(1).) More than general conclusory allegations are required to make this showing even when the petition is liberally construed. (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.) "The prima facie requirement is not met unless the facts alleged, if supported by evidence . . . would sustain a favorable decision on the petition." (*Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.) "In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

Mother insists she made a prima facie showing of changed circumstances because she continued to engage in services and completed various programs. Evidence that a mother is simply continuing to participate in services with no change in behavior, attitude, ability to parent, or acceptance of responsibility for past actions that injured or created risk of injury to the minors cannot constitute a prima facie showing of changed circumstances. Her reported open, honest presentation in groups and classes has not translated into application of the principles learned. She has made no progress in dealing with the minors' behaviors during visits and continues to insist that their behaviors are not stress and trauma related but are due to a desire to spend more time with her. If her view were correct, the increase in visitation would have produced a positive effect on the minor's behaviors during visits. It did not. Moreover, while mother was unable to deal with the minors' behaviors, others, including visit supervisors and the various foster parents, were. The evidence of progress in substance abuse treatment and housing was evidence only that circumstances may be changing, not that they had changed.

Even assuming mother has adequately shown a change in circumstances, she has not shown that the proposed order was in the minors' best interests. The minors were subjected to serious physical abuse and neglect in mother's care. Their exposure to

7

indifferent parenting and violence had a negative effect on their behavior and perceptions.  Mother's alleged commitment to them had not averted either the neglect of care or abuse they suffered despite years of services to reunify with the half sibling and similar informal services prior to their removal.  The minors needed structure, consistency, and safety.  Mother's pattern of succeeding in services and failing to apply what she had learned led to years of upheaval and eventual group home placement for the minors' half sibling.  We see no reason to subject these already troubled children who are beginning to stabilize and improve to a similar fate.  Mother did not plead facts showing the proposed change was in the minors' best interests, and the court could properly deny the petition for modification on that ground without holding a hearing.  (*Daijah T.*, *supra*, 83 Cal.App.4th at pp. 672-673; *Zachary G.*, *supra*, 77 Cal.App.4th at p. 806.)

### DISPOSITION

The orders of the juvenile court are affirmed.


                                                    RAYE            , P. J.



We concur:



        ROBIE           , J.



        MURRAY          , J.



8