Filed 8/12/15  In re H.H. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re H.H. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E062634 |
| Plaintiff and Respondent, | (Super.Ct.No. INJ1100399) |
| v. | OPINION |
| S.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Lawrence P. Best, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Gregory P. Priamos, County Counsel, James E. Brown, Guy B. Pittman, and Julie Koones Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

I

INTRODUCTION[1]

S.H., father, appeals from the termination of his parental rights on October 29, 2014. (§§ 395, subd. (a)(1), and 366.26.) Mother is not a party to the appeal.

On appeal, father argues he received ineffective assistance of counsel (IAC) because his appointed lawyer did not subpoena his medical records or interview his psychologist.[2] Respondent DPSS[3] argues the appeal should be dismissed as untimely and that father's counsel was not ineffective. Notwithstanding the timeliness of father's appeal, we hold there was no IAC. We affirm the orders of the juvenile court.

II

APPEAL'S TIMELINESS

Respondent is incorrect about the notice of appeal being too late. The juvenile court's orders were made on Wednesday, October 29, 2014. The 60th day for filing a notice of appeal was Sunday, December 28, 2014. If the last day to file a notice of appeal falls on a legal holiday (including Saturdays, Sundays, and other days the courts are closed for business), the deadline is extended to the next day that is not a holiday. (Code Civ. Proc., §§ 12, 12a, 12b; Cal. Rules of Court, rule 8.60(a); see *Shufelt v. Hall* (2008) 163

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Because father uses the terms interchangeably in his appellate brief, it is not clear whether father means the court-ordered psychologist or a psychiatrist whom father consulted separately.

[3] Department of Public Social Services, County of Riverside.

2

Cal.App.4th 1020, 1022, fn. 2; *In re William C.* (1977) 70 Cal.App.3d 570, 573, fn. 1; *Taliaferro v. Davis* (1963) 217 Cal.App.2d 215, 216.)  Father timely filed his notice of appeal on Monday, December 29, 2014, the first court day after the 60th day.

III

FACTUAL AND PROCEDURAL BACKGROUND

*A. Detention*

In June 2011, the two older children, H.H. and K.H., were previously detained from the parents because of unsafe and unsanitary living conditions.  After the children were declared dependents, the family received services between November 2011 and June 2013.  The third child, D.H. became a dependent soon after she was born in May 2012.  The previous dependency was terminated in June 2013.  In June 2013, mother and the children were living at a facility but they soon moved to the home of the paternal aunt.

DPSS filed an original dependency petition in July 2013, involving H.H., age five, K.H., age four, and D.H., 14 months old.  The petition alleged parents' failure to protect and negligence, and parental incapacity.  (§ 300, subd. (b).)  Specifically, the family's residence had no running water and contained decaying food and plastic bags of fecal matter.  Father had mental health issues, including anxiety, and a history of using methamphetamine and marijuana.  Father had drug possession convictions and had been charged twice with child endangerment.  The parents had unsuccessfully received family services from November 2011 until June 2013.

On July 27, 2013, DPSS had responded to a referral regarding general neglect.  The police had been called regarding a dispute between parents and their landlord about

3

eviction. The house had little or no furniture, no stove, and an odor. The only food was some canned ravioli, infant food, cookies, and apple juice for the children. The parents said they had no running water for two years and were using plastic bags in the toilet.

Father could not provide any rental documentation but he claimed the residence was temporary. Mother expressed anxiety and distress about the family's living situation. The paternal aunt was willing to have the family live with her but the parents were not cooperative.

Father had been hospitalized and was taking 14 medications for high blood pressure, cholesterol, diabetes, blood clotting, back and chest pains, seizures, and anxiety. Father admitted a history of using methamphetamine and marijuana but not since 1994. Mother also suffered from anxiety. Father was unemployed and pursuing a disability appeal. The family was receiving public assistance.

Father's criminal history included drug offenses in July and August 1989. He was on probation from June 2000 until June 2003. Father was a narcotics registrant in Nevada.

DPSS recommended the children be detained and placed in foster homes and the parents receive services and be allowed supervised visitation. At the detention hearing on July 31, 2013, the court appointed legal counsel for the parents and ordered the children detained in foster care.

B. *Jurisdiction and Disposition*

In August 2013, DPSS reported that parents had immediately regressed back to the circumstances that caused the previous dependency which ended in June 2013. The parents had made minimal progress on their case plans. Father "did not believe there was

4

any more to learn." DPSS recommended the children be declared dependents and the parents receive services.

At the hearing on September 12, 2013, the court sustained the dependency petition, ordered the children removed, and ordered reunification services. The court ordered both parents to have psychological evaluations.

## C. *Six-Month Review*

DPSS reported that, in March 2014, the parents were living with father's sister, the paternal aunt, in a cluttered, messy house that smelled of animal urine but had working utilities and sufficient food. The house had belonged to father's father who had recently died. The family income was about $680 in supplemental food benefits. The cost of utilities was about $600 a month.

Mother was 24 years old. Father was 52 years old. Father had many health problems: cardio metabolic syndrome, spinal bifida, high blood pressure, back pain, sciatica, stenosis, stroke, heart attacks, and other ailments. Father was taking many medications. In spite of multiple opportunities, father had not submitted to a psychological evaluation between September 2013 and April 2014, a failure he blamed on his poor health.

Although generally healthy, all three children displayed developmental delays or psychological problems. The parents had been visiting the children regularly for 90 minutes twice a week. Both parents expressed doubts about the value of the services they had received. In March 2014, DPSS recommended the parents receive an additional six months of services.

5

In April 2014, DPSS filed an addendum report recommending services be terminated for both parents.  Mother and father had separated and mother was living with a new boyfriend.  The therapist treating the parents described them as argumentative, verbally and emotionally abusive, angry, and unwilling to take responsibility.  Under the circumstances, the parents were incapable of improvement.  On April 14, 2014, the court agreed with DPSS and terminated reunification services for the parents.

D.  *Status Review Report—Sections 366.26 and 366.3*

In August 2014, DPSS recommended the children be considered for adoption.  As of August 5, 2014, they had been placed in a prospective adoptive home.  The prospective parents are employed, have college degrees, and live in a well-maintained, three-bedroom house.  They are financially stable and have been married since 2008 with no biological children.  In October 2014, the children had successfully adapted to their new home.  The adoptive parents are willing to allow postadoption contact with the parents.

On October 29, 2014, the court conducted a *Marsden*[4] hearing at father's request. Father asked for the court to appoint an attorney to replace Krista Lupica.  Father complained that Lupica had not subpoenaed witnesses and medical records.  The court denied father's request for new counsel.  The court terminated parental rights.  Father appealed.

---

[4] *People v. Marsden* (1970) 2 Cal.3d 118.)

6

IV

DISCUSSION

On appeal, father contends Lupica did not subpoena his medical records or interview his psychologist (or psychiatrist) and, had she done so, a different result was reasonably probable. We reject father's argument.

We evaluate IAC claims using a two-part test: "In the first step, we examine whether trial counsel acted in a manner expected of a reasonably competent attorney acting as a diligent advocate. If the answer is no, we move to the second step in which we examine whether, had counsel rendered competent service, the outcome of the proceeding would have been more favorable to the client. (See, e.g., *In re Emilye A.* (1992) 9 Cal.App.4th 1695, 1705, 1711.)" (*In re Ana C.* (2012) 204 Cal.App.4th 1317, 1329-1330; *In re Athena P.* (2002) 103 Cal.App.4th 617, 628; *In re Z.N.* (2009) 181 Cal.App.4th 282, 293.) Reversal is only appropriate where there is no "rational tactical purpose" for a lawyer's conduct (*People v. Frye* (1998) 18 Cal.4th 894, 980) and if the record clearly shows inadequate representation or irreconcilable conflict. (*Z.N.,* at p. 294.)

The juvenile court properly inquired about the reasons for father's dissatisfaction. Father stated there were character witnesses and medical records that Lupica did not obtain by subpoena. Father asserted he could not afford to get copies of his extensive medical records to show how sick he was. He also mentioned he had consulted a psychologist or psychiatrist on his own.

Lupica explained the parents had testified at several hearings and father had provided handwritten notes but not medical records as she had requested from him. Father

7

also never completed the court-ordered psychological evaluation although he was given many opportunities. Lupica had received a phone call from father's psychiatrist but when she told him DPSS would not pay him, she heard nothing more from him. The court ruled that Lupica had represented father "competently and professionally," and denied his *Marsden* request. Lupica told father she could file a section 388 petition but she needed the psychological evaluation to do so.

Based on the foregoing, we conclude father did not demonstrate his lawyer did not act as a reasonably competent attorney based on an objective standard. (*In re Ana C., supra,* 204 Cal.App.4th at p. 1330.) According to the record, father wanted the medical records to show he had been too sick to complete his case plan in the past. At this stage of the proceedings, however—after reunification services had already been terminated— father needed to demonstrate that he was complying with his plan, notably that he had completed a psychological evaluation and that changed circumstances would support a section 388 petition. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223; *In re S.J.* (2008) 167 Cal.App.4th 953, 959; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) Even now on appeal, father does not contend that he has ever completed the court-ordered evaluation. Apparently the psychiatrist father consulted did not perform an evaluation because he would not be paid.

Furthermore, father has not shown a more favorable result was reasonably probable. The court's decision to terminate reunification services in April 2014 was based on the parents' inability to progress in a myriad of ways. Father's poor health was a minor factor

8

in his lack of compliance.  A major issue was his failure to complete the psychological evaluation.

Finally, the best interests of the children compel a custody determination assuring them stability and continuity in the prospective adoptive home where they have lived since August 2014.  (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)  The children have adapted well.  They have shown improvement and have become attached to the prospective parents.  After more than four years of dependency proceedings, it is in the children's best interests to reject father's appeal and secure them a safe and permanent home.

V

DISPOSITION

Father did not receive ineffective assistance of counsel.  We affirm the orders of the juvenile court.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

KING
Acting P. J.

MILLER
J.

9